[Nos. F000494, F001560. Fifth Dist. Aug. 21, 1985.]

In re the Marriage of CAROL D. and JOHN D. WATTS.
CAROL D. WATTS, Appellant, v.
JOHN D. WATTS, Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I through VI and part IX.

COUNSEL

Gill & Gill and S. B. Gill for Appellant Wife.

Arthur E. Wallace for Appellant Husband.

OPINION

**BEST, J.**—The parties in this dissolution of marriage proceeding were married on September 30, 1975, and separated on April 29, 1979. Carol D. Watts (hereinafter referred to as Carol) filed her petition for dissolution of marriage on May 15, 1979. John D. Watts (hereinafter referred to as John) filed his response on June 14, 1979. Trial was held on September 14, 1981, and the interlocutory judgment was filed on April 12, 1982.

Thereafter on May 14, 1982, Carol brought a motion for temporary spousal support pending appeal, attorney fees and costs on appeal and an injunctive order. An order after hearing was filed by the court on August 12, 1982, which provided, among other things, that Carol would be awarded spousal support from John in the amount of $400 per month payable monthly on the 15th day of each and every month commencing June 15, 1982, and continuing until the pending appeal is finally determined, the death or remarriage of Carol, or further order of the court, whichever first occurs. The order also provided an award of attorney fees to Carol's attorney for the appeal in the amount of $3,000 plus costs incurred for the preparation of the clerk's and reporter's transcripts on appeal. John was also enjoined and restrained from borrowing against or removing any monies on deposit with his pension and profit-sharing plan except to the extent that said monies exceed $125,000.

At the time of marriage, John was a board-certified surgeon who left the employment of the Kern Medical Center as the chief of the department of surgery approximately four months prior to marriage. During the said four-month period which commenced on June 1, 1975, he was associated in a medical partnership with Dr. Charles Ashmore. The practice continued until sometime in 1976 when a medical corporation was formed. The practice was then transferred to the corporation in exchange for stock. The partnership was not dissolved at that time.

Prior to his entry into the partnership with Dr. Ashmore, John was earning the sum of $55,000 per year. At the time of his marriage to Carol,

John's annual earnings were estimated to be approximately $84,500, consisting of $77,000 in salary income and $7,500 in retirement benefits.

At the time of separation, John was earning approximately $131,500, consisting of a salary of $90,000 plus retirement plan contributions of approximately $41,500.

Additional facts will appear in the discussion of the issues.

DISCUSSION

I*

*Did the trial court improperly value the community property interest of the parties in the medical corporation?*

. . . . . . . . . . . . . . . . . . . . . . . . . .

VII

*Did the trial court err in finding that John's medical practice had no goodwill value?*

John's experts, apparently utilizing the market value or comparable sales method of valuation, concluded that because no market existed for John's medical practice the practice had no goodwill. William Redmond qualified as an expert on the basis of his prior experience as an appraiser, his long-standing residence in the City of Bakersfield and his experience as inheritance tax referee, having been appointed to that position in January 1977. Mr. Redmond ultimately testified that the goodwill of the medical practice has no value. Similarly, Jimmy Sheats stated that he was a certified public accountant licensed by the State of California for approximately 12 years and had maintained his professional practice in the Bakersfield area for the entire 12 years. Mr. Sheats, after analyzing the books and the records of the professional corporation and answering extensive questions on those books and records, testified that in his opinion there was no goodwill in John's medical practice.

Carol contends that there was no substantial evidence to support the trial court's finding, arguing that Mr. Sheats' and Mr. Redmond's testimony is of little value to the extent that they both found no goodwill in

*See footnote on page 366, *ante.*

John's medical practice because the practice could not be sold. Carol instead points to the opinion testimony of her expert, John T. McWhorter, which was based on the capitalized excess earnings method of valuation of the goodwill, and whose conclusion was that the goodwill value of John's practice was $293,000.

The trial court made findings of fact as follows:

### FINDINGS OF FACT

"9. Respondent's medical practice has no excess earnings during the course of the marriage and had no goodwill on the date of separation, the evaluation date ordered by the court pursuant to Petitioner's motion therefor."

### SPECIFIC FINDINGS

"2. Respondent's earnings on the date of separation were $90,000.00 in wages, and $41,500.00 in retirement.

"3. A surgeon of similar skills to that of Respondent could have earned between $90,000.00 to $120,000.00 wages annually in the private sector on or about the date of separation, to wit, April 30, 1979."

Carol contends that the failure of the trial court to value goodwill in John's medical practice resulted in an unequal distribution of the community assets.

■ It is undisputed that in a dissolution case involving a professional practice the court must determine whether goodwill exists. If it does, the court must value it and take it into consideration in dividing the community property. (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738 [131 Cal.Rptr. 873, 552 P.2d 1169]; *In re Marriage of Slater* (1979) 100 Cal.App.3d 241 [160 Cal.Rptr. 686].)

Business and Professions Code section 14100 has defined the goodwill of a business as the expectation of continued public patronage. In *In re Marriage of Foster* (1974) 42 Cal.App.3d 577, 581 [117 Cal.Rptr. 49], the court quoted with approval from *In re Lyons* (1938) 27 Cal.App.2d 293, 297-298 [81 P.2d 180], as follows: "[Goodwill is] '. . . the advantage or benefit which is acquired by an establishment beyond the mere value of capital stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances, or necessities, or even from ancient partialities or prejudices. [Citation.] . . . it is the probability that the old customers will resort to the old place. It is the probability that the business will continue in the

future as in the past, adding to the profits of the concern and contributing to the means of meeting its engagements as they come in.' [Citation.]"

In *In re Marriage of Fortier* (1973) 34 Cal.App.3d 384, 388 [109 Cal.Rptr. 915], the Court of Appeal upheld the trial court's finding of zero goodwill based on market value stating, "Therefore, since community goodwill may be evaluated by no method that is dependent upon the post-marital efforts of either spouse, then, as a consequence, the value of community goodwill is simply the market value at which the goodwill could be sold upon dissolution of the marriage, taking into consideration the expectancy of the continuity of the practice."

In *In re Marriage of Foster, supra,* 42 Cal.App.3d 577, the court, after discussing the *Fortier* case, explained that it did not believe the *Fortier* case restricts the method of evaluating goodwill to market value. (*Foster, supra,* at pp. 583-584.) The court then held as follows: "The value of community goodwill is not necessarily the specified amount of money that a willing buyer would pay for such goodwill. In view of exigencies that are ordinarily attendant a marriage dissolution the amount obtainable in the market place might well be less than the true value of the goodwill. Community goodwill is a portion of the community value of the professional practice as a going concern on the date of the dissolution of the marriage. . . .

"In sum we conclude the applicable rule in evaluating community goodwill to be that such goodwill may not be valued by any method that takes into account the post-marital efforts of either spouse but that a proper means of arriving at the value of such goodwill contemplates any legitimate method of evaluation that measures its present value by taking into account some past result. Insofar as the professional practice is concerned it is assumed that it will continue in the future." (*Id.,* at p. 584.)

Our research discloses no Supreme Court decisions which provide guidance in trying contested family law issues of goodwill valuation of businesses or professional practices. Instead, it appears that, as stated in *In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 109 [113 Cal.Rptr. 58], "each case must be determined upon its own facts."

In the present case, by SPECIFIC FINDINGS Nos. 2 and 3 the trial court apparently found that John's excess earnings as of the date of separation amounted to a minimum of $11,500. ($131,500 minus $120,000.) This finding conflicts with FINDING OF FACT No. 9 that John's medical practice had no excess earnings. Had the court employed the capitalized excess earnings method of valuing the goodwill of the medical practice a monetary value would have resulted. (See Cal. Marital Dissolution Practice

(Cont.Ed.Bar 1981) § 9.68, pp. 315-316; *In re Marriage of Foster, supra,* 42 Cal.App.3d 577, 585.) By FINDING OF FACT No. 9, the trial court by implication intended to employ the capitalized excess earnings method in valuing the goodwill of John's medical practice. Nowhere in its notice of intended decision or in its findings of fact and conclusions of law does the trial court indicate otherwise.

We hold, therefore, that the trial court erred in finding that John's medical practice had no goodwill at the date of separation of the parties.

We further conclude that it would have been error had the trial court found that John's medical practice had no goodwill simply because there was no market for the practice.

In *In re Marriage of Fenton* (1982) 134 Cal.App.3d 451 [184 Cal.Rptr. 597], the court quoted with approval from *In re Marriage of Foster* as follows: " 'The value of community goodwill is not necessarily the specified amount of money that a willing buyer would pay for such goodwill. In view of exigencies that are ordinarily attendant a marriage dissolution the amount obtainable in the marketplace might well be less than the true value of the goodwill. *Community goodwill is a portion of the community value of the professional practice as a going concern on the date of the dissolution of the marriage.* As observed in *Golden,* ". . . in a matrimonial matter, the practice of the sole practitioner husband will continue, with the same intangible value as it had during the marriage. Under the principles of community property law, the wife, by virtue of her position of wife, made to that value the same contribution as does a wife to any of the husband's earnings and accumulations during marriage. *She is as much entitled to be recompensed for that contribution as if it were represented by the increased value of stock in a family business."* (270 Cal.App.2d 401, 405.)' *(In re Marriage of Foster, supra,* 42 Cal.App.3d at p. 584, italics added.)" *(In re Marriage of Fenton, supra,* at p. 461.)

In the dissolution of marriage context, the mere fact that a professional practice cannot be sold, standing alone, will not justify a finding that the practice has no goodwill nor that the community goodwill has no value.

Upon remand, the trial court will determine Carol's entitlement to goodwill in accordance with the views expressed in this opinion.

## VIII

*Did the court err in failing to reimburse the community for the reasonable value of the use of community property by John from the date of separation to the time of trial?*

■ The trial court found that John had the "use of" both the family residence and the medical practice between the date of separation and the

date of trial. The court then found that 10 percent was a fair rate of return to the community for the use of the residence and the medical practice by John. However, the trial court concluded that it did not have the authority to require John to reimburse the community for his exclusive use of the community property after separation. Carol contends this conclusion by the trial court is erroneous and contrary to existing case law.

Three cases cited by Carol do not directly deal with the issue herein, but address a somewhat related issue. In *In re Marriage of Smith* (1978) 79 Cal.App.3d 725 [145 Cal.Rptr. 205], one spouse was seeking reimbursement for the use of separate funds to pay community obligations after separation. The court concluded that in some cases reimbursement should be allowed, stating: "[W]e are persuaded the rule disallowing reimbursement in the absence of an agreement for reimbursement should not apply and that, as a general rule, a spouse who, after the separation of the parties, uses earnings or other separate funds to pay preexisting community obligations should be reimbursed therefor out of the community property upon dissolution. However, there are a number of situations in which reimbursement is inappropriate, so reimbursement should not be ordered automatically.

"Reimbursement should not be ordered if payment was made under circumstances in which it would have been unreasonable to expect reimbursement, for example, where there was an agreement between the parties the payment would not be reimbursed or where the paying spouse truly intended the payment to constitute a gift or, generally, where the payment was made on account of a debt for the acquisition or preservation of an asset the paying spouse was using and the amount paid was not substantially in excess of the value of the use." (*Id.*, at p. 747.)

This language was specifically approved and adopted by the Supreme Court in *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 84-85 [154 Cal.Rptr. 413, 592 P.2d 1165].

The present case does not involve the use of separate property to pay community debts, and instead involves the reimbursement to the community for the exclusive use of a community property asset by one spouse. In *In re Marriage of Tucker* (1983) 141 Cal.App.3d 128, 136 [190 Cal.Rptr. 127], this court also recognized the principle enunciated in *Smith* and *Epstein, supra,* and expressly found that a $30 monthly payment on the outstanding balance of $450 for a refrigerator was not substantially in excess of the value of the exclusive use of the same by the paying spouse during the separation period. By its holding, this court necessarily found that the com-

munity was entitled to reimbursement for the value of the exclusive use of the refrigerator, a community asset, from the husband.

In *In re Marriage of Johnson* (1983) 143 Cal.App.3d 57, 62 [191 Cal.Rptr. 545], the wife contended that she was entitled to a portion of the postseparation gross receipts realized by the husband's use of the commercial fishing vessel alleged to be community property. The court held that, depending upon the trial court's determination of the community property interest in the vessel, the issue of the income derived from such use after separation must be addressed on remand. Thus, *Tucker* and *Johnson, supra,* support the contention made by Carol.[4]

We hold that the trial court erred in concluding that it had no authority to reimburse the community for the value of John's exclusive use of the family residence and the medical practice between the date of separation and the date of trial.

Upon remand, the trial court will determine whether John should be required to reimburse the community for the value of his use of community assets after the date of separation in accordance with its findings. That determination should be made after taking into account all the circumstances under which exclusive possession was ordered. (See *In re Marriage of Smith, supra,* 79 Cal.App.3d at p. 747.)

IX*

*Did the court err in failing to reimburse the community for John's use of community funds to discharge his separate indebtedness during marriage?*

. . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The trial court's order after judgment (issues V and VI herein) is affirmed. The judgment is affirmed in part (issues I-IV and IX), reversed in part (issues VII and VIII) and remanded for further proceedings in accordance with this opinion.

---

[4]See also *In re Marriage of McNeill* (1984) 160 Cal.App.3d 548 [206 Cal.Rptr. 641].
*See footnote on page 366, *ante.*

John to bear costs on appeal.

Hanson (P. D.), Acting P. J., and Hamlin, J., concurred.

A petition for a rehearing was denied September 17, 1985, and the judgment was modified to read as printed above.