Filed 9/16/13  Carrasco v. Carrasco CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| SONIA CARRASCO, | B241686 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. PD044362) |
| v. | |
| JESUS CARRASCO, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Patricia M. Ito, Judge.  Affirmed.

Law Offices of Mark J. Warfel and Mark J. Warfel for Plaintiff and Appellant.

Law Offices of Stanley Silver and Stanley Silver; Law Offices of Alan Goldberg and Alan M. Goldberg for Defendant and Respondent.

Sonia Carrasco (wife) appeals a judgment following trial of a marital dissolution proceeding.

The essential issue presented is whether certain real property on Berg Street (the Berg property or Berg), which was conveyed by Josefa Carrasco (Josefa) to her brother, Jesus Carrasco (husband), should be deemed to be community property.

We conclude the trial court properly determined the Berg property was not a community asset, reject wife's other contentions, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Trial proceedings*.

The parties separated in 2007, after 14 years of marriage. The dissolution trial was conducted over a period of days between June and September of 2011. Various issues addressed below, such as child custody and visitation, are not in issue on appeal. At this juncture, the principal controverted issue is the trial court's determination that the Berg property and the associated bank accounts are not community property. In that regard, the evidence at trial established:

Husband's sister, Josefa, had a catering business. In 2005, she was faced with a lawsuit by an injured employee. Josefa was concerned that if a judgment were to be rendered against her, it would affect her personal residence, which was her only asset. Therefore, Josefa and her brother, i.e., husband, agreed that Josefa would convey Berg to husband in the form of a sale.

At the time of the transaction, Berg had a fair market value of $505,000 and Josefa owed $320,000 on the property, which meant she had $185,000 in equity.

Husband told wife that he would be holding Berg "in trust" for his sister. Wife was opposed to the transaction and asked not to be on the Berg title.

Likewise, husband did not want wife to be on title to Berg because it would be his "sole property" and he wanted to protect himself in the event of a divorce. Over the years, husband and wife had marital difficulties and had been separated at various times.

2

Jennifer Escobar (Escobar), a real estate agent who is wife's friend, testified that in 2005 husband and his sister contacted Escobar about obtaining financing on the Berg property. While the loan was being processed, wife contacted Escobar and told Escobar she was concerned about the transaction. Wife asked Escobar to prepare a deed to ensure that wife was not on title to the Berg property. Escobar had someone prepare an interspousal deed to address wife's concerns, and said deed was recorded as part of the loan transaction. Also, wife was not involved in the loan application for the Berg property.

Josefa executed a grant deed to husband, conveying Berg to "Jesus Carrasco, a married man as his sole and separate property." The financing consisted of a new first loan in the amount of $320,000, which paid off Josefa's existing loan, secured by a new first deed of trust. Husband testified he simply "paid whatever [his] sister owed on the house." Thus, husband had $185,000 in equity in the property, although the equity later disappeared with the collapse of the housing market.

Josefa continued to live at Berg and she made all the mortgage payments on the property. No community funds went into Berg.

Josefa gave her brother $100 to open an account at Washington Mutual (now Chase Bank) in his name. Josefa made all the deposits into said account and also made all the withdrawals from said account. All the mortgage payments for Berg were made through this account. The lender automatically withdrew the loan payments on a biweekly basis.

Although Josefa made all the mortgage payments, husband's name was on the mortgage and husband and wife deducted the mortgage interest for Berg on their tax returns. The community used the Berg mortgage interest as a tax write-off because the mortgage on the Carrasco family residence had been paid off.

3

2. *Trial court's ruling.*

The judgment of dissolution entered May 11, 2012, includes the following pertinent findings:

"Based on the testimony of the parties, the court finds that the real property located at 14337 Berg Street, Los Angeles CA 91342, and the associated bank accounts are not community property.

"39.  The court finds that [husband] holds the property in resulting trust for his sister.

"40.  The court finds that the real property belonged to [husband's] sister, Josefa Carrasco, and that Josefa Carrasco transferred it to [husband] to protect the house due to litigation pending against her.

"41.  The court finds that [husband] obtained a mortgage in his name alone.

"42.  The court finds that the transaction was explained to [wife], including the tax benefit to the community of the mortgage interest and property tax deductions for the Berg St. property.

"43.  The court finds that [husband] did not want [wife] on title to the property in the event of a divorce.

"44.  The court finds that [wife] signed an interspousal transfer deed with knowledge of what she was doing, per her own testimony.  The court finds that [wife] affirmatively expressed to her friend Jennifer Escobar a desire not to be on title and that she requested Ms. Escobar to prepare a document ensuring that [wife] would not be on title.

"45.  The court finds that [husband] admitted in response to a request for admission that he paid the fair market value for the real property.

"46.  The court finds that at the time of the transfer of title to [husband], after obtaining a new mortgage to pay off the old mortgage balance, there was equity of $185,000 in the Berg Street property.

"47.  The court finds that [wife] claims that she should be reimbursed for the $185,000 paid to the sister.  The court finds that [wife] testified that the

4

community did not have $185,000 to pay [husband's] sister and was unable to trace any community funds allegedly paid to the sister.

"48. The court finds that the mortgage payments and other expenses have been paid for by the sister and not by the community. The court finds that the funds in the bank accounts from which the mortgage was paid were provided by the sister, Josefa Carrasco.

"49. The court finds that the sister, Josefa Carrasco, lives in the Berg Street property and pays no rent to [husband].

"50. The court finds that there is no equity in the Berg Street property at the time of trial from which to reimburse the community, even if reimbursement [were] owing.

"51. The court finds that any presumption of undue influence has been rebutted since [wife] was aware of and approved the transaction and no community funds went into the house. Accordingly, the Court finds no breach of fiduciary duty."[1]

Wife filed a timely notice of appeal from the judgment.

**CONTENTIONS**

Wife contends: the trial court erred in finding husband holds Berg in resulting trust for Josefa; husband breached his fiduciary duty when he claimed to be merely holding Berg in trust for Josefa at the time of purchase and the interspousal transfer deed, and the trial court should have awarded wife a credit of $185,000, the highest value of the property; the trial court erred in finding the funds in the checking account were held in resulting trust for Josefa, and wife should have been awarded 100 percent of the deposits in the checking account; the trial court erred in finding the funds in a linked account were held in resulting trust for Josefa, as there was no testimony as to the source of the deposits, and instead

---

[1] There apparently was no request for a statement of decision. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134.)

5

the total deposits should have been awarded to wife; the trial court erred in not finding a breach of fiduciary duty when husband admitted the existence of a credit union account and refused to provide information relevant to the account; the trial court should have held that when a party hides income to determine support, that party forfeits the right to *Watts* credits (*In re Marriage of Watts* (1985) 171 Cal.App.3d 366), or at the very least redetermined the appropriate support and adjusted the *Watts* credits; and the trial court should have considered $100,000 in hidden income during the marriage, and even more post-separation, when determining spousal support.

## DISCUSSION

1. *No merit to wife's arguments with respect to the Berg property*.

The evidence at trial, summarized above, established that Josefa conveyed Berg to husband in order to avoid a potential judgment creditor. Josefa conveyed Berg to husband as his sole and separate property, and at the time of the conveyance wife executed an interspousal transfer deed disclaiming any interest in Berg. Further, no community funds went into Berg. Although the new loan was in husband's name, Josefa made all the loan payments and other expenses related to Berg. This record fully supports the trial court's finding that Berg was not community property.

Nonetheless, wife contends the trial court erred in holding husband holds Berg in trust for Josefa because Josefa was not joined as a party. (See Cal. Rules of Court, rule 5.24 [discretionary joinder of persons claiming an interest in property].) Wife also contends a resulting trust cannot exist in favor of seller when a buyer pays full market value to the seller and husband admitted he paid full fair market value for the property. (See *Majewsky v. Empire Constr. Co., Ltd*. (1970) 2 Cal.3d 478, 485 [resulting trust arises when transfer of property is made to one person and purchase price is paid by another].)

6

These arguments by wife are an irrelevancy. The evidence fully supports the trial court's determination that Berg was *not* community property. Beyond that, whether Berg is husband's separate property, or whether husband holds Berg in a resulting trust for Josefa, is of no concern to wife. Because the community has no interest in Berg, the nature of husband's interest in Berg is of no consequence to wife.

2. *No merit to wife's argument re breach of fiduciary duty.*

Wife contends husband breached his fiduciary duty when he claimed to be merely holding Berg in trust for Josefa at the time of the purchase and the execution of the interspousal transfer deed, and the trial court should have awarded her a credit of $185,000, the highest value of the property.

To reiterate the trial court's ruling, "[a]ny presumption of undue influence was rebutted since [wife] was aware of and approved the transaction and no community funds went into the house. Accordingly, the Court finds no breach of fiduciary duty."

Wife's contention the trial court should have found a breach of fiduciary duty does not meet the issue. At the appellate level, the issue is whether, *on this record*, the trial court erred in finding that husband did not breach his breach fiduciary duty. The record reflects that wife was duly advised with respect to the Berg transaction and that she wanted no part of it. As the trial court found, wife "affirmatively expressed to her friend Jennifer Escobar a desire not to be on title and that she requested Ms. Escobar to prepare a document ensuring that [wife] would not be on title."

Given this record, the trial court properly rejected wife's claim that husband breached his fiduciary duty in taking title to Berg as his separate property.

3. *No merit to wife's contention the trial court should have found the funds in the Chase checking account were community property*.

Wife contends the trial court erred in finding the funds in the Chase checking account were held in resulting trust for Josefa, and the trial court should have awarded 100 percent of the deposits in the checking account to wife.

In this regard, the trial court found the funds in the bank accounts were provided by Josefa. This finding is supported by substantial evidence. As indicated, the trial testimony of both husband and Josefa was that Josefa made all the deposits into the Chase checking account. The trial court believed said testimony and we defer to its credibility determination.

Accordingly, there is no merit to wife's contention the trial court should awarded her the funds which were deposited into the Chase checking account.

4. *No merit to wife's contention with respect to the linked Chase account*.

Similarly, wife contends the trial court erred in finding the funds in a second account which was linked to the Chase checking account were held in resulting trust for Josefa, as there was no testimony as to the source of the deposits, and instead it should have awarded the total deposits to wife.

As indicated, the trial court found the deposited funds in *both* Chase accounts were provided by Josefa.

At trial, husband testified he did not recall a second Chase account which was linked to the Chase checking account. He did not remember if two Chase accounts were opened up in his name, or just one. In any event, he never made any deposits into *either* account.

Although wife takes issue with the trial court's finding that the funds in the linked Chase account belong to Josefa, the trial court believed husband's testimony that he did not deposit any monies into either account. This court cannot reweigh the evidence in that regard.

8

5. *No merit to wife's contention regarding an allegedly undisclosed credit union account.*

Wife contends the trial court erred in not finding a breach of fiduciary duty based on husband's alleged failure to disclose a First City Federal Credit Union account until trial, and failure to provide information relevant to the account.

The argument is unsupported by the record. Wife's trial testimony includes the following colloquy on cross-examination:

"Q   Did you have access or the use of the First City credit union account?

"A   I did."

This testimony disposes of wife's contention that husband "blatantly failed to disclose this account."

6. *Spousal support.*

a. *Trial court's ruling.*

Before addressing wife's contentions regarding hidden income and spousal support, we summarize the trial court's ruling as to spousal support. The trial court ruled in pertinent part:

"15.  The Court makes no order for spousal support since the parties are self-supporting.  However, the Court retains jurisdiction to award spousal support to either party. This is a marriage of long duration.

"16.   The court finds that the parties' average gross income on their tax returns for the period 2001-2007 was $140,014.00.

"17.  Based on her Income and Expense Declaration filed October 18, 2010, the court finds that [wife] has estimated/proposed living expenses of $3,424 per month.  Her net spendable income is $5,317 per month.  [Wife] has a degree in Business Administration and six to seven years of college. She is a medical case worker for the Los Angeles County Department of Mental Health, and has no mortgage expense.

9

"18. Based on his Income and Expense Declaration filed June 8, 2011, the court finds that [husband] has living expenses of $3,190.00 per month. [His] net spendable income as a sergeant for the Los Angeles County Sheriff's Department (after payment of child support) is $4,868.00 per month. The court finds that [husband] makes less as a sergeant than before his promotion in 2008 due to the reduced availability of overtime.

"19. The court finds that the parties list minimal liquid assets, and that each party will receive over $175,000.00 in real or personal property or equalization payment."

      b. *No merit to wife's contentions with respect to hidden income and spousal support.*

Wife contends the trial court should have held that when a party hides income to determine support, that party forfeits the right to *Watts* credits or at the very least the trial court should have redetermined the appropriate amount of support and adjusted the *Watts* credits;[2] and the trial court should have considered $100,000 in hidden income during the marriage, and even more post-separation, when determining spousal support.

These arguments by wife are based on her theory that husband had hidden income which he kept in the undisclosed bank accounts. As discussed, the trial court found the funds which were deposited into the Chase accounts belonged the Josefa. Further, the credit union account was not undisclosed – wife admitted at trial that she utilized that account.

Therefore, there is no basis for wife's contention that husband's nondisclosure requires modification of spousal support and modification of the amount of the *Watts* credits.

---

[2]    Pursuant to *In re Marriage of Watts, supra,* 171 Cal.App.3d 366, the trial court awarded a net credit to husband of $29,107.50 for wife's exclusive use of the family residence post-separation.

**DISPOSITION**

The judgment is affirmed. Husband's request for sanctions on appeal is denied. The parties shall bear their respective costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KLEIN, P. J.


We concur:


CROSKEY, J.


KITCHING, J.