Filed 3/25/21  Marriage of Wilson CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re Marriage of MARY S. JONES WILSON and MICHAEL A. WILSON. | B300609 |
| | (Los Angeles County Super. Ct. No. BD530826) |
| MARY S. JONES WILSON, <br><br> Respondent, <br><br> v. <br><br> MICHAEL A. WILSON, <br><br> Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rolf M. Treu, Judge.  Affirmed.

Law Offices of Wendy L. Sheinkopf and Wendy L. Sheinkopf, for Appellant.

Sall Spencer Callas & Krueger, Suzanne Burke Spencer and Michael A. Sall; Devan Beck Law Group and Devan Beck, for Respondent.

Mary Jones Wilson (Mary) and Michael Wilson (Michael) used community funds to build a home on a parcel owned by a trust created by Michael's parents, Stanley Wilson (Stanley) and Joan Wilson (Joan). Years later, when Mary and Michael separated, a dispute arose as to whether the community possessed an option to buy the parcel. The trial court held a bifurcated trial on the issue of whether the parties entered into a valid and enforceable lease with an option to buy the parcel in 1995 (the lease/option agreement), found the agreement valid, and ordered Mary and Michael to cooperate in exercising the option. Michael appeals this ruling and we consider (1) whether the family court properly excluded evidence regarding Michael and his parents' intent when they signed the lease/option agreement, (2) whether Mary terminated the lease/option agreement when she commenced another lawsuit, and (3) whether the family court erroneously ruled the trust currently owns the parcel.

## I. BACKGROUND

Mary and Michael married in 1979.[1] Mary petitioned for dissolution of the marriage in 2010. In November 2018, the family court set a trial on property and debt division issues, including ownership of real property located at 31626 Sea Level Drive in Malibu, California (the Sea Level property).

---

[1] Both Mary and Michael have been licensed to practice law since the 1970s. Mary served as in-house counsel at several companies before seeking opportunities as an arbitrator and Michael spent his entire career at the Los Angeles County District Attorney's office.

2

The parties stipulated the family court would first determine whether the community held an option to buy the Sea Level property pursuant to the lease/option agreement. The family court heard testimony from Mary, Michael, and Jeffrey Donfeld (Donfeld), the attorney who drafted the agreement.

### A.    Mary and Michael's Real Estate Transactions

At trial, Mary and Michael testified about three Southern California properties where they lived during the marriage: a home they purchased with community funds in 1980 on Eagle Pass Drive in Malibu, California (the Eagle Pass property), a home Michael's parents owned on Carol Drive in West Hollywood, California (the Carol Drive property), and the Sea Level property.

Mary and Michael lived at the Eagle Pass property between 1980 and 1984, at which time they temporarily separated and rented the property to a third party. When they reconciled, they moved into the Carol Drive property. Mary testified the Carol Drive property needed extensive renovation but she was reluctant to invest community funds in this work because she and Michael had no ownership interest in the property. Michael assured her, however, that his parents would sell the property to them "for a cheap price" if they "fix[ed] it up." Michael disputed all this, testifying Mary insisted on undertaking the renovations, they did not pay rent to his parents, and his parents never indicated they planned to give or sell the Carol Drive property to them.

After a few years at the Carol Drive property, Mary and Michael returned to the Eagle Pass property. In 1993, the Eagle Pass property was damaged in a fire. Mary and Michael collected

3

approximately one million dollars in insurance proceeds. After the fire at the Eagle Pass property, Mary and Michael moved to the Sea Level property.

In 1995, soon after moving into the two-bedroom, two-bathroom cottage on the Sea Level property, Mary and Michael made plans to build a new home on the parcel using the insurance proceeds from the Eagle Pass property. Mary testified she told Michael she did not "want to invest a million dollars on somebody else's property" because she remembered her expectations regarding Carol Drive and "[did not] want that problem again." The Sea Level property was then owned by the Wilson Family Trust, with Michael's parents Joan and Stanley as trustees.

Michael consulted with Donfeld and asked him to prepare a residential lease with an exclusive right and option to purchase the Sea Level property. The lease/option agreement Donfeld prepared at Michael's direction states Mary and Michael would pay annual rent of $19,200 in two installments each year. It further gave Mary and Michael the exclusive option to purchase the Sea Level property for $1,000,000 after the death of Michael's parents.[2] The option would survive earlier termination of the lease for any reason. The instrument also includes an integration clause stating it "constitutes the entire understanding and agreement of the parties . . . ."

Mary testified that Michael met with Joan and Stanley to execute the document. She wanted to attend the meeting, but Michael told her to stay home and watch the children. Michael arrived home with two copies of the lease/option agreement

---

[2]     Both of Michael's parents died before trial.

4

bearing his and his parents' original signatures. Mary signed both copies, made a photocopy for herself, and returned the originals to Michael. She did not see the original documents again, and she kept the copy she made in a safe deposit box at her bank.

Michael's testimony about the lease/option agreement was quite different. He testified that although he and his parents signed the lease/option agreement, they signed only one copy and he never discussed the agreement with Mary or presented it to her to sign. (As we will later discuss in more detail, the family court did not allow Michael to present evidence that would purportedly demonstrate he and his parents did not intend to form a contract when they signed the instrument but signed it just "in case" they later wanted to make a contract.)

According to Michael, he and Mary lived at the Sea Level property pursuant to a lease executed prior to the lease/option agreement. That lease provided for annual rent of $22,800. When he was asked about a check to Joan as trustee for $9,600 (the biannual rent amount set forth in the lease/option agreement) dated November 1, 1995 (the beginning of the lease term defined in that agreement), and drawn on his and Mary's checking account, Michael said he could not recall what the purpose of the check was.

In 1997, Mary and Michael purchased a strip of land adjacent to the Sea Level property as joint tenants and tied the strip to the Sea Level property. They then used the Eagle Pass insurance proceeds to build a new home on the Sea Level property.

## B.     *The Family Court's Ruling*

The family court found the community possessed an exclusive option to purchase the Sea Level property. The court reasoned it "defies logic that [Mary] would permit the expenditure of funds for the . . . construction of the Sea Level residence" without an option to buy the property. The court found Mary signed and saved a photocopy of the agreement when Michael presented it to her. The court also rejected Michael's contention that Mary terminated the lease/option agreement in a 2015 lawsuit against Michael, Joan, and various trusts because her declaratory relief cause of action in that case "affirm[ed] her belief in the contract."

The family court ordered Mary and Michael to cooperate in exercising their option to purchase the Sea Level property. The court remarked that "this ruling may help the parties with respect to resolution of other matters. Obviously, the court's finding that this is a valid option given to the parties would vitiate any subsequent granting or quitclaiming of, or any title documents with respect to this property, so it takes priority in terms of their relationship between the parties as to it."

After the family court announced its ruling, Michael's attorney expressed her view that there was "another part of the trial to commence." Among other things, Michael's attorney argued the family court should decide the parties' respective interests in and the value of the Sea Level property at different points in time, including the enforceability of a quitclaim deed transferring a portion of Michael's purported 100% interest in the

Sea Level property to the community; conduct a *Moore*[3]-*Marsden*[4] analysis based on community contributions to and benefits derived from the Sea Level property; calculate any *Epstein*[5] credits due to Michael based on the use of separate property to pay community debts; and calculate any *Watts*[6] charges due to Michael based on Mary's use of the Sea Level property.

The family court concluded trial of these issues was not immediately necessary. The court explained that "the lease option is valid and it is the community's interest in this property. [¶] Therefore, whatever happens subsequent or what has happened subsequent thereto, the court sees no basis for further adjudication. The parties have the option. They have an equal interest in this option, and they proceed from there. [¶] If they exercise the option, and I've ordered them to cooperate in the exercise of the option, they purchase the property from the trust for the amount set forth. And what more is there to decide." The family court entered a judgment ordering the parties to cooperate in exercising the option and reserving jurisdiction over all other issues.

## II. DISCUSSION

Michael contends the family court abused its discretion in excluding evidence that Michael and his parents did not intend to

---

[3]     *In re Marriage of Moore* (1980) 28 Cal.3d 366.

[4]     *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426.

[5]     *In re Marriage of Epstein* (1979) 24 Cal.3d 76.

[6]     *In re Marriage of Watts* (1985) 171 Cal.App.3d 366.

form a contract when they executed the lease/option agreement. But Mary was not a party to any of the communications the family court excluded, and that means those communications were properly excluded as irrelevant: the existence of mutual assent necessary to form a contract is determined based on the parties' outward manifestations of consent, not their privately held intentions. Michael also argues that even if there was an agreement, Mary terminated it when she sued Michael, Joan, and others for anticipatory breach of contract. But that argument fails because it mischaracterizes Mary's lawsuit. Lastly, Michael asks us to reverse the family court's ruling that the Sea Level property is currently owned by his parents' trust. The family court made no such ruling. The family court's remarks during the proceedings do reveal it assumed Mary and Michael would exercise the option in favor of purchasing the Sea Level property, but the court did not determine—and Mary does not contend—the trust is the current owner of the Sea Level property.[7]

## A. The Family Court Properly Excluded Evidence of Michael and His Parents' Subjective Intent

Michael contends the family court misapplied the parol evidence rule in excluding evidence that he claims would have shown "[he] and his parents . . . never intended the [lease/option agreement] to constitute a contract, and that in lieu thereof

---

[7] Michael asks us to remand for trial of other issues. Because the family court reserved jurisdiction over any remaining issues, however, no remand is necessary.

8

another contract was entered into between them . . . ."[8] Among other things, Michael sought to introduce evidence that his parents and their estate planning attorney did not approve of the lease/option agreement, were contemplating other options to give him an interest in the Sea Level property, and signed the agreement "for convenience purposes only, in case [they] ever decided to make an offer to Michael and Mary and thereafter use the Lease Option Draft as a bona fide agreement."

The parol evidence rule, however, was not the sole basis for the family court's exclusion of that evidence. For example, when Michael's attorney asked him whether "it was [his] understanding when [he] signed the lease option document that [he] was signing a binding contract," the family court ruled "[h]is understanding is irrelevant and also invades the parol evidence rule." We need not resolve the parol evidence question because evidence of Michael and his parents' unexpressed intent was correctly excluded as irrelevant (and exclusion on parol evidence grounds would be harmless for that same reason (*Ajaxo, Inc. v. E\*Trade Financial Corp.* (2020) 48 Cal.App.5th 129, 185)).

"An essential element of any contract is the consent of the parties, or mutual assent. (Civ. Code, § 1550, subd. 2, 1565, subd. 2.)" (*Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 270.) ""The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward

---

[8]     Michael asserts in his reply brief that the family court also erred in excluding evidence that Mary "ratifi[ed] . . . other deeds from Michael's parents granting him full and sole ownership of the Sea Level property." The argument is belatedly raised and forfeited for that reason. (*Habitat & Watershed Caretakers v. City of Santa Cruz* (2013) 213 Cal.App.4th 1277, 1292, fn. 6.)

manifestations of consent would lead a reasonable person to believe. [Citation.] Accordingly, the primary focus in determining the existence of mutual consent is upon the acts of the parties involved.'" [Citations.]" (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 789.)

"Under California law, the subjective, unexpressed beliefs of the parties do not serve as the basis for whether or not a contract is formed." (*Alexander v. Codemasters Group Ltd*. (2002) 104 Cal.App.4th 129, 150, disapproved on another ground in *Reid v. Google, Inc*. (2010) 50 Cal.4th 512, 524.) "In the absence of fraud, mistake, or another vitiating factor, a signature on a written contract is an objective manifestation of assent to the terms set forth there. [Citation.] If the terms are unambiguous, there is ordinarily no occasion for additional evidence of the parties' subjective intent. [Citation.] Their 'actual intent,' for purposes of contract law, is that to which they manifested assent by executing the agreement." (*Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1027 (*Rodriguez*).)

Both Mary and Michael testified that Mary was not present when Michael and his parents signed the agreement. Michael further testified that he never discussed the agreement with Mary. Whatever reservations or qualifications might have been shared among Michael and his parents at signing, there is no evidence that these were communicated to Mary. As far as Mary was concerned, the only outward manifestation of Michael and his parents' intentions was their signatures on the agreement. Their intent, "for purposes of contract law, is that to which they manifested assent by executing the agreement." (*Rodriguez*, *supra*, 212 Cal.App.4th at 1027.)

## B. Mary's 2015 Lawsuit Did Not Terminate the Lease/Option Agreement

In 2015, Mary sued Michael and Joan individually and in their capacities as trustees of various trusts with interests in the Sea Level property. Mary's complaint alleged Joan and Stanley executed the lease/option agreement on behalf of the family trust, which then owned the Sea Level property, and the agreement was "never revoked, rescinded, terminated, or withdrawn." Based on a declaration Joan submitted in the dissolution proceedings, however, Mary alleged Joan and others disputed whether the lease/option agreement is a valid contract. Accordingly, she sought a declaration that the lease/option agreement is valid and enforceable. In the alternative, Mary alleged fraud, unjust enrichment, promissory estoppel, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty based on the defendants' misrepresentations concerning, among other things, the existence of a valid lease/option agreement.

Michael contends Mary sued on a theory of anticipatory breach of the lease/option agreement, which would operate in effect as a repudiation of the agreement and a request for civil damages instead. (See *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 489 ["In the event the promisor repudiates the contract before the time for his or her performance has arrived, the plaintiff . . . may 'treat the repudiation as an anticipatory breach and immediately seek damages for breach of contract, thereby terminating the contractual relation . . .'"].) That, however, is factually incorrect: Mary's lawsuit expressly sought a declaration that the lease/option agreement is valid and enforceable. Further, as to the non-declaratory relief causes of

11

action in the lawsuit, none turned on whether the lease/option agreement was actually enforceable. Mary's fraud claim, for instance, was based in part on the allegation that the defendants *falsely* represented that the lease/option agreement is valid and enforceable.

Michael also asserts, putting aside the contrary text of the complaint, that Mary's election to terminate the lease/option agreement is revealed in other documents filed in the 2015 litigation. In that litigation, Michael contended Mary's causes of action were time-barred because she had a claim of anticipatory breach of contract as early as 2009.[9] (See *Jones v. Wilson* (Dec. 26, 2017, B277392) [nonpub. opn.] (*Jones*).) In response, Mary argued an anticipatory breach would in fact toll the statute of limitations and her causes of action were therefore not time-barred "because they accrued based on anticipatory breach." Mary's argument as to when her causes of action accrued did not indicate that she sought to terminate, rather than enforce, the lease/option agreement. Rather, she reiterated her purpose to "obtain a declaration of [her] rights under the [lease/option agreement]" in the same document.

### C. *The Family Court Did Not Decide the Trust Created by Michael's Parents Now Owns the Sea Level Property*

The family court declined to adjudicate issues relating to the Sea Level property other than whether Mary and Michael

---

[9] The trial court sustained a demurrer to Mary's complaint on statute of limitations grounds. (*Jones*, *supra*, B277392.) This court affirmed in part and reversed in part. (*Id*.)

12

possess a valid option to purchase the property: "[T]he court sees no basis for further adjudication. The parties have the option. They have an equal interest in this option, and they proceed from there." In its judgment that expressly reserved decision over any other remaining issues,[10] the family court held the lease/option agreement is "a valid and enforceable agreement and is a community asset, held by each party equally, and each Party shall cooperate with the other in whatever exercise is intended to be made of the option."

Michael seizes upon stray remarks to contend the family court also made a finding as to the current owner of the Sea Level property. In particular, Michael emphasizes the family court's comments that the option "would vitiate any subsequent granting or quitclaiming of, or any title documents with respect to this property, so it takes priority in terms of their relationship between the parties as to it" and that "[i]f [Mary and Michael] exercise the option, and I've ordered them to exercise the option, they purchase the property from the trust for the amount set forth."

In context, the family court's comment about post-option transfers being vitiated by the option was merely an observation that, *whoever* currently owns the Sea Level property, they are bound to sell to Mary and Michael pursuant to the option. Michael's attempt to read more into these remarks makes little sense when, as he acknowledges, the family court "did not receive

---

[10]     Among the issues that Michael believes the family court should have decided (but which the court may still decide pursuant to the reservation of jurisdiction in the judgment) are Family Code section 2640 reimbursement rights, *Epstein* credits, *Watts* charges, and *Moore-Marsden* analyses.

13

any testimony as to current or other ownership and the states of title as to the Sea Level property . . . ." The family court's suggestion that Mary and Michael would be buying the Sea Level property "from the trust" must be read in the same light. There was no argument at trial that the Sea Level property is still owned by Michael's parents' trust. Indeed, Mary's counsel argued that "[Michael] as the fee holder is subject to the option."[11] None of these comments can be plausibly construed as a ruling that Michael's parents' trust is the current owner of the Sea Level property.

---

[11] Another remark Michael characterizes as a "ruling" by the family court as to the current ownership of the Sea Level property is even more clearly an explanation that the family court was *not* ruling on the current ownership of the property:

"[Michael's trial attorney]: The current ownership interest is by title and deed, the quitclaim. And if the quitclaim deed is deemed valid, then there's 75/25 percent interest[.] 75 percent is in Michael's and 25 percent Mary's.

"THE COURT: You're presuming that any of these transfers, as the court said, have any relevance whatsoever. They are subject to the original superseding option period. There is no title to this property currently in the party's [sic]. There's nothing to transfer. There was nothing to transfer. [¶] The option is what their ownership interest is or their—yes, their ownership interest is. That is what the court has determined, that that is a community property interest . . . ."

14

DISPOSITION

The family court's interlocutory judgment is affirmed.
Mary shall recover her costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, Acting P. J.

We concur:


MOOR, J.


KIM, J.