Filed 8/27/21  Marriage of Ward CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re the Marriage of DONNA WARD and THOMAS ALLEN WARD. | |
| DONNA WARD,<br><br>        Respondent.<br>v.<br>THOMAS ALLEN WARD,<br><br>        Appellant. | A159250<br><br>(Contra Costa County Super. Ct. No. MSD16 -03246) |

Thomas Allen Ward (husband) appeals from a judgment denying his motion to quash writs of execution filed by Donna Ward (wife) to enforce a judgment in their divorce action and to declare that judgment to be fully satisfied.  He argues the writs did not accurately reflect what he owed and that he was entitled to offsets for rent and damage to a home that was awarded to him as his separate property.  Husband also challenges the trial court's award of attorney fees as a sanction under Family Code section 271.[1]  We affirm.

_____

    [1] Further statutory references are to the Family Code unless otherwise indicated.

1

## I. BACKGROUND

Wife filed a divorce petition in 2016 after 32 years of marriage. She continued living in the family home. On November 16, 2018, the parties, each represented by counsel, signed a Stipulation and Order for Division of Property (settlement agreement) resolving all issues except spousal support.

Paragraph 1 of the settlement agreement provided, "The community residence [in Moraga] shall be assigned to [husband] as his sole and separate property subject to the following terms: [¶] a. Within 30 days of execution of this agreement, [husband] shall provide proof of his ability to prequalify to buy out [wife's] interest in the residence [for] $464,000.00. [¶] . . . [¶] (d) Upon completion of the terms outlined herein and upon receipt of the agreed upon equalization payment by [wife], [wife] shall vacate the residence within 30 days of receipt, or by January 2, 2019, whichever happens second." Paragraph 8 provided, "The parties agree to mutually waive credits owed to each other pursuant to *Marriage of Epstein* and *Marriage of Watts*." (See *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 84–85 (*Epstein*), superseded on other grounds as stated in *In re Marriage of Walrath* (1998) 17 Cal.4th 907, 914; *In re Marriage of Watts* (1985) 171 Cal.App.3d 366, 374 (*Watts*).) Paragraph 12 provided that a certain Bank of America account was community property and that $21,415 would be transferred to wife within 45 days. The settlement agreement also divided other property and required equalizing payments that are not at issue here.

In December of 2018, the court held a trial on the issue of support and issued a statement of decision awarding wife monthly support of $5,000 (reduced to $4,000 in 2022), along with $4,000 in temporary support arrears. It also ordered husband to contribute $24,000 to wife's attorney fees, to be paid at a rate of $1,000 per month. (See § 2030.) Husband appealed these

orders and we affirmed in an unpublished opinion. (*In re Marriage of Ward* (April 29, 2020, A156599) [nonpub. opn.].)[2]

Meanwhile, while his appeal was pending, husband refinanced the family home in March 2019 and paid wife the equalization payment for the home as provided in their settlement agreement. Wife moved out in April 2019. Husband paid wife only $7,315 toward the attorney fees, support arrearages and division of the remaining property that he had been ordered to pay, and he took the position that the remaining amount he owed had been satisfied because he was entitled to offsets against the judgment for wife's use of the property after it was awarded to him and for wife's damage to the property while it was under her control.

When efforts to meet and confer about the delinquent payments were unsuccessful, wife obtained writs of execution issued to the sheriffs of Contra Costa County and Los Angeles County, where husband had bank accounts. Due to the error of wife's counsel, the amount sought by the writs ($49,415 for the unpaid balance plus fees and interest) did not reflect the $7,315 payment that had been made by husband.

The Los Angeles County Sheriff delivered notice of levy to Bank of America, where husband had a bank account, but husband had by that time closed the account. The error in the amount stated in the writs was discovered by the parties, and wife's counsel conferred with husband, who by then represented himself, concerning this error. Counsel represented that she would not be attempting to serve any additional writs with the incorrect amount noted.

Husband filed a Motion to Quash Writs of Execution and to Declare Judg[]ment Satisfied" on October 2, 2019, in which he argued that the

---

[2] We take judicial notice of this opinion. (Evid. Code, § 452, 459.)

3

judgment against him should be declared satisfied because (1) wife owed rent from November 2018 to April 2019 on the family home as well as half of the property taxes from 2018; (2) wife damaged the family home while she resided there; and (3) husband had paid wife $7,315 toward the judgment that was not reflected in the writs of execution. The court denied husband's ex parte application for an order shortening time to hear the motion to quash and set the matter for a hearing.

Counsel for wife advised husband by email that the motion was moot because the Bank of America account in Los Angeles County had been closed and she would not be taking steps to have the Contra Costa County writ served because it stated the incorrect outstanding amount. Husband responded that his motion contained "two parts, a first part to Quash the Writ, and a second part with a Declaration of Judgment Satisfaction. The second part is not moot, so it is not necessary to remove the motion from [the] calendar."

The court denied the motion after a hearing held on November 6, 2019. It found that a writ of execution was an appropriate remedy (see *In re Marriage of Farner* (1989) 216 Cal.App.3d 1370, 1376–1378 [court must determine whether writ of execution proper remedy for enforcing an order in a family law case]), and that husband owed wife $42,100 under the terms of the judgment, an amount which reflected the $7,315 payment that husband had made.[3] It denied husband's requests for offsets against the judgment based on rent and property taxes for the period when wife lived in the family

_____

[3] The original judgment included $21,415 for wife's community interest in the Bank of America account, plus $24,000 in attorney fees, plus $4,000 for arrears of temporary spousal support, for a total of $49,415. When the $7,315 payment made by husband is subtracted from this amount, this leaves the $42,100 that the court stated was owed under the judgment.

4

home, noting the parties had waived *Watts* charges and *Epstein* credits in the settlement agreement.  The court ordered husband to pay $7,900 of wife's attorney fees as a sanction under section 271.

## II.  DISCUSSION

### A.  *Errors in Writs of Execution*

Husband argues that it was error for the court to deny his motion to quash because the writs of execution included the full amount originally owed under the judgment and did not account for the $7,315 husband had already paid to wife.  Wife agrees the $7,315 was paid, and that the writs misstated the amount owed under the original judgment, but she argues the writs are "essentially ineffective" and that enforcement proceedings will need to be initiated anew.

Given the undisputed error, arguably the court should have partially granted the motion.  (See *In re Marriage of Peet* (1978) 84 Cal.App.3d 974, 977–978 [affirming order partially quashing writ to reflect offset].)  We conclude, however, that the issue is moot because an appellate ruling to this effect would "have no practical effect or cannot provide the parties with effective relief." (*Californians for Alternatives to Toxics v. Department of Pesticide Regulation* (2006) 136 Cal.App.4th 1049, 1069.)

At the hearing on the motion to quash, counsel for wife represented as an officer of the court that the amount stated in the writs was incorrect and that "any further enforcement will reflect the correct amount owed."  The court indicated that only $42,100 was still owed under the original judgment and that counsel "will correct the writ of execution to be $42,100."  This was the proper amount of the unpaid balance of the original judgment reflecting husband's $7,315 payment.

Wife's counsel has not taken steps to serve the writ in Contra Costa County and the attempt to levy in Los Angeles County was unsuccessful because husband had closed his bank account. Under the circumstances, a reversal would serve no practical purpose.

B. *Order that Husband Pay the Full Amount of Attorney Fees*

Husband argues that the court erred in ruling that he owed $42,100 under the judgment because this included the full amount of the $24,000 in attorney fees ordered and those fees were not yet fully due at the time the motion to quash was heard. We agree with wife that this claim is also moot.

Husband reasons that because the original order allowed him to pay the attorney fees at a rate of $1,000 a month, only a portion of the total amount was owed when the hearing on the motion to quash was held in November 2019. He notes that the first appeal, which challenged the attorney fee award, was still pending and that consequently, the court did not have jurisdiction to modify the attorney fee order by "accelerat[ing]" it so that the full $24,000 was then owed. (See *Paul Blanco's Good Car Company Auto Group v. Superior Court* (2020) 56 Cal.App.5th 86, 97; *In re Marriage of Varner* (1998) 68 Cal.App.4th 932, 936 [timely appeal generally divests a trial court of jurisdiction over any matter affected by the appeal].)

Assuming the court could not order husband to pay the full amount of the $24,000 in attorney fees when the hearing on the motion to quash was held in November 2019 because under the original judgment, only a portion of the fees was then owed, that is no longer true. As husband acknowledges, his obligation to pay the fees was not stayed during the first appeal because he failed to post an undertaking (Code of Civ. Proc., § 917.1, subd. (a)), and he was required to pay $1,000 per month starting in December 2018. The full $24,000 was due December 2020; thus, at this point, husband owes the full

6

amount of the fees (which were affirmed in the first appeal). " ' "An appellate court will not review questions which are moot and which are only of academic importance." ' " (*Friends of Bay Meadows v. City of San Mateo* (2007) 157 Cal.App.4th 1175, 1192 (*Friends*).)

### C.  Watts *Charges*

Husband argues the court's calculation of the amount owed under the judgment should have included an offset for rents owed by wife for the time that she lived in the family home after the original judgment was entered.[4] We disagree.

Where one spouse has the exclusive use of a community asset after separation, that spouse may be required to compensate the community for the reasonable value of that use. (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 978 (*Falcone*); see § 2626.)  "The right to such compensation is commonly known as a '*Watts* charge.' " (*Falcone*, *supra*, 203 Cal.App.4th at p. 978; see *Watts*, *supra*, 171 Cal.App.3d at p. 374.)

Husband acknowledges that he waived *Watts* charges as part of the settlement agreement, but he argues this waiver does not apply to charges accrued *after* the house was awarded to him as his separate property.  He assumes that *Watts* charges, which compensate the *community*, can only be applied during the period "between separation and trial." (*Falcone*, *supra*, 203 Cal.App.4th at p. 978.)  He argues that this means *Watts* charges could not have been assessed after the trial in December 2018 (which resolved those issues not resolved by the November 2018 settlement agreement), and

---

[4] In the trial court, husband argued that wife should have paid one-half of the property taxes on the family home in 2018.  He appears to have abandoned this basis for claiming offset on appeal.

7

his waiver of *Watts* charges in the settlement agreement did not apply to rents that would otherwise be owed after the trial.

We do not agree with the premise that the date of final judgment or dissolution marks a bright line after which no *Watts* charges may be assessed. In *In re Marriage of Jeffries* (1991) 228 Cal.App.3d 548, 552–553, the court recognized that *Watts* charges could be made when one party made exclusive use of the family home from the date of separation until the date "the community itself no longer held an interest in the residence." Here, the settlement agreement gave wife the right to stay in the property until 30 days after husband refinanced and paid her an equalizing payment equal to half of the equity in the home.[5] The community thus had an interest in the property until 30 days after the equalizing payment was made, and *Watts* charges could have been assessed up until that point absent a waiver. The waiver of *Watts* charges in the settlement agreement continued to apply while wife lived in the home waiting for her equalization payment. There is no evidence wife stayed in the home longer than the date contemplated, and the trial court did not err in denying an offset.

D. *Offset for Damage Allegedly Caused by Wife*

Husband argues that the court's calculation of the amount owed under the original judgment should have been reduced to reflect an offset for $6,000 worth of damage he alleges wife caused to the marital home while she lived there. He presented no evidence below in support of this claim. Husband

---

[5] Although husband suggests that wife should have moved out of the home upon her receipt of a $10,000 equalization payment pertaining to property other than the marital home, a fair reading of the settlement agreement is that the 30-day period for wife to vacate the home was triggered by her receipt of the proceeds from the refinancing, which did not occur until March 2019.

argues he was precluded from offering such evidence by the court's ruling that *Watts* charges had been waived. But damage to the home is not a *Watts* charge, and if husband had possessed evidence of damage that he wanted the court to consider, he should have made an offer of proof. Husband has not carried his burden of showing he was entitled to an offset. (See *Conrad v. Ball Corp.* (1994) 24 Cal.App.4th 439, 444 ["A defendant seeking an offset against a money judgment has the burden of proving the offset."].)

#### E. *Section 271 Fees*

The court awarded $7,900 in attorney fees under section 271, which provides that a family court may impose an award of attorney fees and costs "in the nature of a sanction" where the conduct of a party or attorney "frustrates the policy of the law to promote settlement of litigation." (§ 271, subd. (a).) A purpose of the statute is "to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." (*Ibid*.) Husband argues there was no basis for making this award. We disagree.

We review the sanction order for abuse of discretion and reverse " ' " 'only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order.' " ' " (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1478.) The court here could reasonably conclude that the writs of execution in this case were necessary only because husband made a unilateral and meritless claim that the judgment had been satisfied because he was entitled to offsets against what he owed.

Husband argues that wife made no showing she incurred any fees because of the hearing on the motion to quash. We disagree. Wife's counsel presented evidence that she had made a number of attempts to meet and confer and eliminate the need for a hearing, but husband declined to take the

9

matter off calendar. Counsel also presented evidence that wife had incurred over $17,000 in attorney fees since January 2019 due to her efforts to obtain amounts due to her under the judgment. There was a sufficient relationship between the fees and costs actually incurred and the award. (See *Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142, 1154–1155 [§ 271 award must be tethered to attorney fees and costs].)

Husband argued at the hearing on the motion to quash that he acted in the good faith belief that he was entitled to have the judgment declared satisfied. But in order to be sanctionable under section 271, conduct need not rise to the level of bad faith or frivolousness. (*In re Marriage of Norton* (1988) 206 Cal.App.3d 53, 58–59 [interpreting predecessor statute to § 271].)

Husband suggests the judge presiding over the motion to quash was biased, noting (1) she denied his ex parte request to quash the writs of execution by writing "denied" on the request with "a big x through the order;" (2) she made the comment, "So if you want to have a trial to discuss how you should not be responsible for all of this stuff outstanding, we can do that;" and (3) she set the amount of sanctions under section 271 at an amount "to substantially match" the amount husband had already paid wife toward satisfying the judgment ($7,900 in section 271 fees versus $7,315 already paid). These circumstances do not demonstrate bias or suggest the judge predetermined the issues.

### III. DISPOSITION

The order denying the motion to quash and to declare the judgment satisfied is affirmed. Ordinary fees on appeal are awarded to wife.

_____

NEEDHAM, J.

We concur.

_____

SIMONS, Acting P.J.

_____

RODRIGUEZ, J. *

Ward v. Ward / A159250

_____

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.