Filed 6/20/22  S.F. v. M.J. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| S.F.,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>M.J.,<br><br>    Defendant and Appellant. | A160335<br>A160735<br>A163530<br><br>(Contra Costa County<br>Super. Ct. No. D1705734) |

In this matrimonial action, appellant M.J. (husband), appearing in propria persona, appeals from several orders and a subsequently entered judgment of dissolution that was sought by respondent S.F. (wife).[1]

In case Nos. A160335 and A160735 (consolidated for briefing), husband appeals from (1) a February 26, 2020 order that, among other things, determined husband's child support arrears, recalculated child support subject to "retroactive modification," awarded wife temporary

---

[1]    We refer to the parties by their initials to protect their privacy and the privacy of their minor child.  (Cal. Rules of Court, rule 8.90(b)(1),(11).)

1

spousal support subject to "retroactive modification," and reserved jurisdiction to resolve the sale of the marital residence; (2) a March 4, 2020 order that granted wife a two-year domestic violence restraining order (DVRO) against husband, awarded wife sole legal and physical custody of their child, and granted husband supervised visits; and (3) an August 10, 2020 order that (a) denied husband's motion to vacate the February 26, 2020 order insofar as it ordered him to pay temporary child support and temporary spousal support based on an imputed yearly income, (b) awarded wife monetary sanctions in the form of attorney fees incurred to defend against husband's false allegation that she had abused the child, and (c) denied husband's request for an order modifying custody and visitation orders.

In case No. A163530, husband appeals from: (1) a June 2, 2021 order that denied his motions to (a) stop the sale of the marital residence, (b) vacate the court's orders of February 26, 2020 and November 9, 2020, and (c) delay the court's signing of findings and order after a hearing on April 8, 2021;[2] (2) a July 12, 2021 order that granted wife's request for attorney fees and sanctions payable from husband's share of the proceeds from the sale of the marital residence and reconfirmed that wife was to be paid $66,987.35 from the proceeds of the marital residence sale;[3] and (3) a judgment entered on September 29, 2021, which dissolved the marriage as of that date.

---

[2] We deem the notice of appeal from "judgment after court trial" entered on "5/28/2021" to be from the June 2, 2021 order entered after the May 28, 2021 hearing. (Cal. Rules of Court, rule 8.100(a)(2) ["notice of appeal must be liberally construed"].)
[3] We deem the notice of appeal from judgment or order entered on "7/9/21" to be from the July 12, 2021 order entered after the

2

Having considered husband's arguments, we conclude he has failed to demonstrate any basis for reversal. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties were married on July 10, 2012 and lived together. They had a child born in 2013. In December 2017, the parties separated. That same month, wife obtained a temporary DVRO against husband and filed a petition for dissolution of the marriage.

On May 29, 2018, the trial court granted wife a one-year DVRO and custody of the child. The court found husband had rebutted the presumption in Family Code section 3044 and allowed him unsupervised visits with the child.[4] Thereafter, on October 25, 2018, the parties reconciled and began living together in the marital residence after entering into a "Spousal Property Agreement" (SPA). As a result of the reconciliation, the trial court issued an order terminating the May 29, 2018 DVRO and the related custody and visitation orders.

Approximately one year later, on November 18, 2019, the trial court issued a temporary DVRO in favor of wife, husband moved out of the marital residence, and the parties again separated. After this second separation, the trial court issued a series of orders including a February 26, 2020 order regarding husband's temporary child support and spousal support obligations and a March 4, 2020 permanent two-year DVRO in favor of wife.

---

July 9, 2021 hearing. (Cal. Rules of Court, rule 8.100(a)(2) ["notice of appeal must be liberally construed"].)

[4] Family Code section 3044 provides a rebuttable presumption that it is not in the best interests of a child to be in the custody of a parent who has been found to have committed domestic abuse.

3

Over the course of several months spanning November 2020 through September 2021, the court held a three-day trial on the issues of child support, spousal support, and the disposition of the marital residence. A judgment dissolving the marriage was entered on September 29, 2021.

<h2 style="text-align:center">DISCUSSION</h2>

Our review of these consolidated appeals is significantly impaired by husband's submission of an incomplete record and opening briefs that fail to comply with our California Rules of Court, which inform parties as to the proper format in which they are to present their arguments to this court. While we recognize that husband is representing himself, our rules of procedure nonetheless apply. "A party proceeding in propria persona 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' [Citation.]" (*First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 958, fn. 1.)

Husband has perfected his appeal using the appendix method but has filed reporter's transcripts as to only some of the proceedings referenced in his opening briefs. (Cal. Rules of Court, rules 8.124 [appendixes], 8.130 [reporter's transcript], 8.137 [settled statement].) Additionally, his opening briefs contain many factual assertions unsupported by any record citations, "in dramatic noncompliance with appellate procedures." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1245–1246; see Cal. Rules of Court, rule 8.204(a)(1)(C) [each brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears;" "[i]f any part of the record is submitted in an electronic format, citations to

4

that part must identify, with the same specificity required for the printed record, the place in the record where the matter appears"].) Lastly, while the opening briefs include point headings, husband's arguments include factual assertions without any record citations and/or any legal authority or cogent analysis as to how or why the court erred or how he was prejudiced by the court's rulings.

Hence, when husband makes a legal argument under a point heading but fails to support it with record citations and/or cogent arguments and citations to legal authority, we will treat the point as forfeited.  (See, e.g., *Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066 ["[w]hen an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited"]; *Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1267 ["plaintiffs make numerous factual assertions in their briefs without record citation" but "[w]e are entitled to disregard such unsupported factual assertions"]; *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 [" '[i]t is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations;' " "[i]f a party fails to support an argument with the necessary citations to the record, that . . . argument [may be] deemed to have been waived"]; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [an appellate court " 'is not required to discuss or consider points  . . .  which are not supported by citation to authorities or the record' "].)

With these principles in mind, we now address husband's arguments.[5]

## I. Parties' Prenuptial Agreement

### a. *Relevant Facts*

On July 10, 2012, the day of the marriage, the parties entered into a "prenuptial agreement" concerning "(among other things) matters of alimony, property settlement, spousal support, and promises by one party to transfer money, property or an asset of any kind to the other party in the future." The prenuptial agreement was executed in Missouri and, by its terms, was "intended . . . [to] be valid and enforceable under the laws of the state of Missouri, and that the laws of [Missouri] shall govern the agreement's interpretation."

After a hearing on February 13, 2018, the trial court filed an order on February 28, 2018 ruling, in pertinent part, that the prenuptial agreement was not valid.

### b. *Analysis*

In challenging the court's February 28, 2018 order invalidating the prenuptial agreement, husband cites to Family Code section 1615

---

[5] Wife's failure to file any responsive briefs does not inure to husband's benefit. "[W]e do *not* treat the failure to file a respondent's brief as a 'default' (i.e., an admission of error) but examine the record, [husband's] brief[s], and any oral argument by [husband] to see if it supports any claims of error made by . . . [him]." (*In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1078, fn. 1; *Rooz v. Kimmel* (1997) 55 Cal.App.4th 573, 594, fn. 12 [in the absence of a respondent's brief, "we follow the better practice of examining the record on the basis of [husband's] brief[s] and reversing only if prejudicial error is found"]; see Cal. Rules of Court, rule 8.220(a)(2) [if a respondent does not file a brief, the court "may decide the appeal on the record, the opening brief, and any oral argument by the appellant"].)

6

and *In re Marriage of Bonds* (2000) 24 Cal.4th 1, and then argues the court "just simply . . . said" the prenuptial agreement was not valid.

Husband has forfeited any challenge to the order as he has not provided either a reporter's transcript or a settled statement as to what occurred at the February 13, 2018 hearing. (*Randall v. Mousseau* (2016) 2 Cal.App.5th 929, 933; see *Id*. at p. 934, fn. 4 [appellant has right to secure a settled statement despite decision not to hire a court reporter].) In the absence of a record of what occurred at the hearing, we presume the trial court considered all relevant facts and correctly applied the law when making its order invalidating the prenuptial agreement. (See *Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 576 ["[i]n the absence of a proper record, which would include either a reporter's transcript or a settled statement (neither of which we have in this case), we must presume the trial court acted properly"].) Because husband has failed to meet his appellate burden of showing the court committed reversible error, his claim fails.

## II. November 7, 2019 Elisor Order

### a. Relevant Facts

Before the commencement of the dissolution proceeding, on August 1, 2016, wife signed an interspousal transfer grant deed by which she granted husband the marital residence, "as his sole and separate property." Thereafter, during the dissolution proceeding, on March 20, 2018, the trial court issued an order stating: "The parties agree that the house shall be put on the market and sold. [Husband] is to provide [wife] with funds allocated for her to move, with the amount to be determined. The funds are subject to reallocation."

7

Several months later, on October 25, 2018, the parties executed the SPA, which provided in pertinent part as follows:

"WHEREAS the parties are married, and [acquired] real property located at [address of the marital residence];

"WHEREAS it is the intent of the parties to reform title to that property from being held in [husband's] name alone to '[wife] and [husband], a married couple as joint tenants'; [¶] . . . [¶]

THEY now agree as follows:

"1.     Within 30 days of the execution of this agreement [husband] shall sign an Interspousal Grant Deed transferring title to the property . . . from himself, to the community as joint tenants. It is the express intent of [husband] to acknowledge that this property is a community property asset and that by signing this agreement he is making an express declaration, in writing of his intention to alter the character of this real property from possible separate property to community property to be held in joint tenancy with right of survivorship. The subject real property will not be sold without the express written consent of both parties. [¶] . . . [¶]

"5.     The parties acknowledge and agree that they each have had the opportunity to review this document with independent counsel prior to affixing their signature hereto.

"6.     The parties further acknowledge that the preparer of this Agreement, [wife's counsel], a member in good standing of the Bar of the State of California is representing [wife] in the preparation of this document, and [wife] has been expressly advised of her right to seek legal assistance in its review. [Husband] is representing himself. Each party has been specifically informed that should he/she fail/refuse to seek legal counsel to review this Agreement, absent a showing of intentional fraud on the part of [wife] or his [sic] legal representative, she [sic] may not challenge this Agreement on the basis of fraudulent inducement.

8

"7.     The parties further acknowledge and agree that they are fully aware of and understand the contents, legal effect and consequences of this Agreement, and that they enter into this Agreement voluntarily, free from duress, fraud, undue influence, coercion or misrepresentation of any kind. [¶] . . . [¶]

"9.     In the event that either parent must file a legal action to enforce this Agreement, the prevailing party shall be awarded reasonable attorney fees and costs from the non-compliant parent.

"10.    This Agreement contains the entire understanding and agreement of the parties, and there have been no promises, representations, warranties, or undertakings by either party as to the other, oral or written, of any character or nature, except as set forth herein."

On August 8, 2019, wife filed a request for orders. Among other things, she sought an order appointing the clerk of the court to act as elisor and sign an interspousal grant deed transferring title of the marital residence from husband to the community as joint tenants pursuant to the SPA ("Elisor Order").[6]  Husband opposed wife's request for an Elisor Order, asserting that the parties' interests in the marital residence was an issue that "should be reserved for trial. . . . Whoever is on the deed is not dispositive, the issue of whether the community

---

[6]     "The use of the term elisor may be technically inaccurate to describe the persons appointed to execute deeds for recalcitrant litigants who refuse to obey orders of the court. (See [Code Civ. Proc.,] § 262.8 denominating as an elisor one who executes process only under certain circumstances having to do with the sheriff or coroner being a party.) We recognize, however, that in common legal parlance the term elisor is used to designate persons appointed to perform functions such as the deed and document execution which is involved in this case." (*Rayan v. Dykeman* (1990) 224 Cal.App.3d 1629, 1635, fn. 2.)

9

holds an interest in the home is an issue that should be reserved for trial."

The request for an Elisor Order was considered by the trial court at a hearing on November 7, 2019. Wife's counsel argued the parties had signed the SPA and, pursuant to that agreement, husband had agreed to put wife's name on the title to the marital residence "purchased in 2016 during marriage using community property credit and, essentially, paid for by the community that he had put in his name alone. . . . He agreed that if he failed to do so he would be liable for attorney's fees. He's failed, of course, to comply with any of those promises that were made because we don't believe he ever had any intention of complying. His intention was to have her drop the Domestic Violence Restraining Order, [but she did not vacate or dismiss the dissolution action]." Wife's counsel further asserted husband had "failed to make mortgage payments. He refinanced the mortgage in 2018. But we need to protect the asset. It is a community asset. But mainly, . . . we're asking the Court to appoint the clerk as elisor to sign this document."[7]

Husband's counsel argued that "whether or not there is [a] community interest in this house is an issue for trial." When the court noted that the SPA provided husband was to sign an interspousal

---

[7] In his combined opening brief in case Nos. A160335 & A160735, at pages 20–21 in footnotes numbered 3 through 9, husband challenges the quoted statements made by wife's counsel, but his factual assertions are not supported by any citations to the record, and according, we disregard them. (*Falcon v. Long Beach Genetics, Inc.*, *supra*, 224 Cal.App.4th at p. 1267 [where a party has made numerous factual assertions in their briefs without record citations, the appellate court is entitled to disregard those unsupported factual assertions].)

10

transfer deed in favor of wife, counsel argued husband had an "equitable defense." The basis for this argument was that husband signed the SPA under coercion and duress as he was "living in his car" and not seeing his child, and wife said he could return to the home and see their child if he signed the SPA. Husband's counsel asserted the court should not condone wife's use of the outstanding DVRO "to achieve some sort of community property leverage," by communicating to husband that he could "come back home and see [his child] if [he signed] over the house."

Following further argument, the trial court granted wife's request for an Elisor Order as the agreement "was signed by both parties over a year ago," and it made no mention that the consideration for husband's signature was that he would be allowed to return to the marital residence.

### b.    *Analysis*

Husband makes several arguments in challenging the Elisor Order, none of which requires reversal.

We see no merit to husband's contention that the Elisor Order should be reversed because the trial court failed to consider the August 2016 interspousal transfer deed by which the marital residence was made husband's "sole and separate property" (hereinafter "2016 deed"). Husband cites no portion of the record indicating the court was asked to consider the 2016 deed. He refers us only to a declaration filed on February 2, 2018 and a declaration filed on August 4, 2020, documents not shown to be before the court at the November 7, 2019 hearing. Even assuming the court was made aware of the 2016 deed, husband presents no cogent argument supported by legal authority as to how the

11

court's knowledge of the 2016 deed would have impacted its ruling on the request for an Elisor Order.

We also see no merit to husband's argument that the SPA was "invalid" for various reasons, including: (1) the SPA did not contain the proper language transmuting the marital residence from husband's separate property to community property; (2) the SPA was given in consideration for the removal of the DVRO that was granted based on a false allegation; (3) husband paid the down payment on the marital residence from funds in his separate bank account; (4) the SPA gave unfair advantage to wife in the pending divorce proceeding; (5) wife's counsel "committed extortion" when she traded the DVRO for title to the marital residence but kept the divorce proceeding alive for future purposes; and (6) the SPA was not a fair trade because husband previously had full ownership of the marital residence, almost 50/50 custody, and only six months left on the DVRO. At the November 7, 2019 hearing the trial court considered husband's arguments, in the form of an offer of proof by his counsel, and found them insufficient to deny wife's request for an Elisor Order.

Husband's citation to statutory and case law governing spousal transmutation of real property is not persuasive. The cited law merely holds that whenever there is a transfer from one spouse to another a rebuttable presumption of undue influence arises *if the transaction gives one spouse an unfair advantage over the other*. (See *In re Marriage of Burkle* (2006) 139 Cal.App.4th 712, 732.) No such unfair advantage has been shown, especially given wife's clear position at the hearing that the status of the marital residence would be resolved at a

later trial and, in the interim, wife was only requesting that her name be placed on the title.

Nor do we see any merit to husband's contention that reversal of the Elisor Order is required because he was prejudiced by the court's ruling. Husband makes only the purely speculative argument that without the "unlawful" Elisor Order, "the parties would have settled early in a fair agreement and the induced harm and injuries to the child and . . . [husband] would have been prevented."

## III. March 4, 2020 DVRO and Related Child Custody and Visitation Orders

Husband challenges the statutory basis and sufficiency of evidence to support the trial court's custody and visitation orders issued on March 4, 2020 following the court's grant of a permanent DVRO in favor of wife and the child. We see no merit to these arguments.

### a. *Applicable Law*

In Family Code[8] section 3020, "[t]he Legislature finds and declares that it is the public policy of this state to ensure that the health, safety, and welfare of children shall be the court's primary concern in determining the best interests of children when making any orders regarding the physical and legal custody or visitation of children. The Legislature further finds and declares that . . . the perpetration of . . . domestic violence in a household where a child resides is detrimental to the health, safety, and welfare of the child." (*Id.*, subd. (a).) The Legislature has also found and declared that "it is

---

[8] All undesignated statutory references are to the Family Code.

13

the public policy of this state to ensure that children have frequent and continuing contact with both parents after the parents have separated or dissolved their marriage, . . . and to encourage parents to share the rights and responsibilities of child rearing in order to effect this policy . . . ." (*Id*., subd. (b).)  Nonetheless, "[w]hen the policies set forth in subdivisions (a) and (b) of [section 3020] are in conflict, a court's order regarding physical and legal custody or visitation shall be made in a manner that ensures the health, safety, and welfare of the child and the safety of all family members." (*Id*., subd. (c).)

Section 3027.1 provides, in pertinent part, that if a court determines "an accusation of child abuse or neglect made during a child custody proceeding is false and the person making the accusation knew it to be false at the time the accusation was made, the court may impose reasonable money sanctions, not to exceed all costs incurred by the party accused as a direct result of defending the accusation, and reasonable attorney's fees incurred in recovering the sanctions, against the person making the accusation. . . ." (*Id*., subd. (a).)  "On motion by any person requesting sanctions under this section, the court shall issue its order to show cause why the requested sanctions should not be imposed.  The order to show cause shall be served on the person against whom the sanctions are sought and a hearing thereon shall be scheduled by the court to be conducted at least 15 days after the order is served." (*Id*., subd. (b).)  "The remedy provided by this section is in addition to any other remedy provided by law." (*Id*., subd. (c).)

Section 3027.5 provides as follows: "(a) A parent shall not be placed on supervised visitation, or be denied custody of or visitation with the parent's child, and custody or visitation rights shall not be

limited, solely because the parent did any of the following: [¶] (1) Lawfully reported suspected sexual abuse of the child; [¶] (2) Otherwise acted lawfully, based on a reasonable belief, to determine if the child was the victim of sexual abuse; [¶] (3) Sought treatment for the child from a licensed mental health professional for suspected sexual abuse. [¶] (b) The court may order supervised visitation or limit a parent's custody or visitation if the court finds substantial evidence that the parent, with the intent to interfere with the other parent's lawful contact with the child, made a report of child sexual abuse, during a child custody proceeding or at any other time, that the reporting parent knew was false at the time it was made. A limitation of custody or visitation, including an order of supervised visitation, pursuant to this subdivision, or a statute regarding the making of a false child abuse report, shall be imposed only after the court has determined that the limitation is necessary to protect the health, safety, and welfare of the child, and the court has considered the state's policy of ensuring that children have frequent and continuing contact with both parents as declared in subdivision (b) of Section 3020."

Section 3044 provides, in pertinent part, that after "a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child . . ., there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child . . . . This presumption may only be rebutted by a preponderance of the evidence."

15

### b. Relevant Facts[9]

### 1. Husband's Requests for Possession of the Marital Residence and Child Custody and Visitation Orders

On July 30, 2019, while the parties were reconciled during the pending dissolution proceeding, husband filed a request for "temporary emergency orders" seeking sole possession of the marital residence, and sole legal and primary physical custody of the child with wife to be granted professionally supervised visits. The request was based on husband's allegation that wife had sexually abused the child as evidenced by "a thumb drive of the video" recorded on cameras installed in the living room of the marital residence.

The court denied husband's request for immediate temporary emergency orders and set the matter for a hearing on September 12, 2019, later continued to November 7, 2019.

### 2. Wife's Request for Section 3027.1 Sanctions Against Husband for Making False Allegation of Child Abuse

In response, on August 20, 2019, wife filed a request for section 3027.1 sanctions on the basis that husband "intentionally made a false allegation of sexual molestation against me, in a document now part of the public record. My attorney has requested he provide me a copy of the alleged 'video' at least 5 times. His attorney has failed to provide this video."

---

[9]     Husband's opening briefs do not present a cogent recitation of the facts with record citations. Accordingly, we have endeavored to ascertain the facts from the appendixes and reporter's transcripts submitted by husband.

16

The court ordered the request for sanctions to be considered at the November 7, 2019 hearing.

### 3. November 7, 2019 Hearing

On November 7, 2019, the trial court convened a hearing to resolve both husband's requests for possession of the marital residence and custody and visitation orders and wife's request for section 3027.1 sanctions.

After hearing argument, the court invoked its authority under section 3027.1 and set a hearing "within 15 days" for November 26 to resolve the parties' competing requests regarding whether husband had made a false accusation of child abuse or neglect against wife, whether to impose sanctions, and whether to make different custody orders as permitted by section 3027.5. Husband's counsel replied, "we would welcome that . . . . I have the video that we're talking about right here. It's not going to be false. It's up for interpretation. It looks weird. I have seen it myself. She's on top of this child with her breasts all in his face. . . . So you're going to see that there is a good faith belief here."

### 4. Wife's Request for DVRO, Possession of Marital Residence, and Child Custody

On November 18, 2019, wife filed a DVRO application seeking protection for herself and the child based upon a number of incidents that occurred September through November 2019. For example, on October 3, 2019, husband "made a report to San Ramon Police. The report stated he showed them a video of me and our son. [Husband] had previously attempted, on July 30, 2019, to obtain an Emergency Temporary Order by accusing me of sexually molesting our son. This is a false and defamatory allegation and he knows it is false. The police

17

found nothing wrong. I DID NOT SEE THE VIDEO UNTIL NOVEMBER 7, 2019 when [husband's] attorney gave a copy to [my] attorney at a hearing. I then realized he had hidden a camera in our home. The thought that he was taping me without my consent and controlling the video is extremely traumatizing for me. He has invaded my privacy in a horrific way." (Original capitals and bolding.) Further, in November 2019, she discovered husband had "secretly installed a recording/listening device in a fake 'smoke detector' " "[i]n violation of Penal Code [section] 647(j)," and Officer J. Nunn of the San Ramon Police Department "came and amended his prior report dated 10/3/19 . . . to include this violation." Wife asserted she was "traumatized, horrified and fearful that [husband] has shared personal, intimate videos of me from the home with others. This discovery makes me extremely fearful."

### 5. November 18, 2019 Temporary DVRO

On November 18, 2019 the trial court issued an order granting wife a temporary DVRO pending a hearing set for December 6, 2019. The temporary DVRO required husband to move out of the marital residence and granted wife sole legal and physical custody of their child with no visitation granted to husband.

### 6. November 26, 2019 Hearing

On November 26, 2019, the trial court convened the scheduled hearing that had been ordered on November 7.

The court began by stating it had reviewed "more than once" the "flash drive which purportedly contain[ed] . . . some clips from a surveillance camera in the home of the parties," which had been provided by husband's counsel at the November 7 hearing. The court

18

stated that if the only evidence in support of husband's request for custody "is this little video from the household surveillance camera, then there was no point in having a hearing because the Court does not deem that anything on the video recording constitutes sexual abuse. If there were some other evidence that was going to be presented, I will hear it. But, if it's based on this little flash drive with the video, I see nothing in that video clip to suggest sexual or physical abuse [of] the child. [¶] For the record, it is several minutes of [wife] playing on . . . the floor with her son, rolling around on the carpet, the son appears to be laughing, and I see absolutely no indication that there is abuse going on." Husband's counsel confirmed he had no further evidence to present.

After considering arguments, the court granted wife's request for sanctions in the sum of $5,000 in attorney fees to defend against husband's false allegation that she had sexually abused the child. The sanctions were directed to be paid from husband's equity share in the marital residence at the time of the division of that property.

In its November 26, 2019 written order, the court ruled, in pertinent part, as follows:

> "The court states that it calendared a hearing . . . at [husband's] . . . [request] for hearing pursuant to Family Code section[s] 3027.1, 3027.5 regarding false allegations of sexual and physical abuse of the minor child . . . . The court further stated that concurrent with this request, made by [husband] at the hearing held 11.7.19, his then attorney . . . provided the court with a [thumb drive] containing video clips of what [husband] . . . alleged were incidents of sexual and/or physical abuse perpetrated by [wife] . . . on the child. After having reviewed several times the contents of the thumb drive, the court made the follow[ing] express findings:

19

"The court found no evidence of any sexual or physical abuse as alleged. The court noted the video showed several minutes of [wife] playing on the floor with the minor child, who the court notes was laughing and smiling during the time.

"Based on the above the court found no reasonable basis for a belief that [wife] . . . had committed abuse of the child, sexual or otherwise and ordered [husband] . . . to pay attorney fees as sanctions . . . in the amount of $5,000. These sanctions shall constitute a judgment as against [husband] . . . and may be paid from his share of the equity in the [marital] home at the time of division of that property."

The court continued the matter to February 10, 2020 for a hearing on wife's request for a permanent DVRO. In the interim, the court directed that all orders contained in the temporary DVRO would remain in effect, except that husband was granted professionally supervised visits (twice weekly, for three hours each), with husband to pay 100 percent of the cost for supervision.

### 7. March 4, 2020 DVRO and Custody Order

On February 10, 2020 and March 4, 2020, the trial court held hearings on wife's request for a permanent DVRO and custody order. Following the testimony of both parties, the court placed on the record its detailed findings in support of the issuance of a two-year DVRO in favor of wife, in pertinent part, as follows:

"Based on the record in front of me, the evidence presented by the parties, and including the Court's credibility determinations of the parties – They've both testified extensively in the Court's presence, and I've had an opportunity to evaluate demeanor, and overall . . . credibility.

"I find . . . by a preponderance of the evidence that [wife] has met the standard for establishing domestic abuse. It is based on . . . [husband's] planting of the camera and use of that to make false accusations against [wife] that she was sexually abusing

20

their son. [¶] This conduct occurred between approximately May 2019 and November 2019. This includes the planting of the camera, and Judge Mockler's eventual ruling on that sexual abuse motion. [¶] This conduct constitutes abuse within the meaning of the Domestic Violence [Prevention] Act. Under [*Altafulla v. Ervin* (2015) 238 Cal.App.4th 571], [p]ages 578 through 580, the Court of Appeal found that conducting surveillance and then distributing information from the surveillance in a way that was calculated to cause and did cause emotional distress warranted issuance of a domestic violence restraining order after hearing.

"The same can be said here. I find that [husband] did surveil [wife], and I do find [that] this was done secretly. I credit her testimony that she was not informed by him that he was planting the camera. He also made it clear that he was planting the camera for the purpose of gaining some kind of advantage over [wife].

"There was somewhat inconsistent testimony from [husband] about the purpose for which he planted the camera. He was saying that he did it as a deterrent to ensure that [the child] would be protected, as he was clearly intending to use it to prevent, to control her conduct, but at the same time, he also testified, 'I did not install the camera to use it against her,' and yet that is precisely what he did when he ultimately filed that serious accusation of sexual abuse, which was found to have no merit. [¶] He then tried to backtrack and say that in October of 2019 he told his attorney to dismiss the motion. He said that his attorney filed it without his full blessing, and yet he appeared in court in November of 2019 after the supposed October communication with the attorney not to pursue it, and at that juncture, it appears in November he was still apparently pursuing the motion against [wife]. [¶] So I find his testimony on why he planted the camera, and his purpose for . . . making the false accusation to be inconsistent and not credible. I think what was happening here was that he planted the camera precisely to control [wife], and then used the results of the surveillance in a manner that was calculated to cause and did cause [wife] great emotional distress."

21

"As [wife] testified at the last court date, when she saw the camera footage, she was horrified, terrified. 'It was a really bad feeling. I don't think anybody would understand completely my situation and how I felt.' I saw her demeanor. This was a very harmful and damaging false accusation. That's incident number one.

"I also base my finding on the October 6th, 2019 incident involving her carrying a tray with a watermelon and a large knife in which [husband] tripped her. This was an unwanted touching, and done in such a fashion that a reasonable person would have known it would cause serious harm given the length of the blade described credibly by [wife] as approximately eight inches.

"[Husband] disputes that this occurred, however, the Court finds [wife] more credible. She acknowledged that she did not know 100 percent if he tripped her intentionally, but then provided reasons to support her belief that he did. [¶] Her reason was that he was in the kitchen as she was leaving. They were not walking next to each other. It's not that he simply tripped and stepped on her flip-flop. [¶] Moreover, . . ., he did not react in a way a person who accidentally trips someone else would have reacted. He didn't apologize, inquire how she was. Instead . . . he went to the sink and splashed water in her face with a smirk in a demeaning fashion. [¶] Again, I credit [wife's] account over [husband's], and this is based on the Court's assessment of the party's demeanor while testifying in Court as well as [wife's] candid acknowledgement with respect to that issue and throughout the proceedings as to what she knew and what she didn't know."

The March 4, 2020 DVRO included an attached child custody and visitation order. That order granted wife sole legal and physical custody and granted husband professionally supervised visits (twice weekly, for three hours each) and non-professionally supervised visits (twice weekly, for up to three hours each). The non-professional supervisor was to be mutually agreed upon by the parties; if the parties

22

could not agree, then wife would propose three persons and husband could choose one of those three persons.

The court explained its reasons for continuing wife as sole legal custodian of the child:

> "The current custody order is sole legal to [wife], with [husband] receiving two, three-hour professionally supervised visits per week. I have reviewed the report[s] from the visit supervisor, and they show a very positive relationship between [husband] and his [child], and I want to be sure that [the child] has the benefit of that continued loving bond. [¶] [Husband] clearly loves his [child] very much, and I do not want to cut off or hamstring that relationship or the continued growth and development of that relationship, however, at this juncture, I do not believe that the [section] 3044 presumption has been rebutted, and sole legal [custody] will remain with [wife]."

The court explained its reasons for allowing both professional and nonprofessional supervision of husband's visits:

> "I would like to increase the amount of visitation. . . . [¶] On the one hand, I would like to maintain supervision because I am concerned about [husband's] conduct. I know he apologized at the outset of [the March 4, 2020] hearing for storming out of the court at the last proceeding, but his behavior in that proceeding suggests to me, in conjunction with his conduct throughout the history of this litigation, that he has not respected the authority of this Court to issues orders, and to abide by those orders.

> "At the last hearing [on February 26, 2020] the evidence also indicated that he's made cash deposits to pay his credit card, which document various trips to China. I'm concerned there is potential of flight risk. He's made a false accusation against [wife] of sexual abuse. I'm concerned he may do so in the child's presence and attempt to taint the son's relationship with [wife], so those would be the reasons why we should continue supervision. [¶] . . . [¶]

> "At the same time and on the other side of the ledger, it's very clear to me that [husband] and his son have a positive and

loving bond, and there's an artificiality to the environment of the supervised visit, and I'm concerned about interfering, again, with the natural growth, and strengthening, and continuation of that bond. [¶] I also am cognizant of the cost implications and don't want the financial issues to become a barrier to [husband] having important and meaningful time with the child."

### 8. August 10, 2020 Denial of Husband's Request for Order Modification

On August 10, 2020, the trial court convened a hearing to consider husband's March 9, 2020 request for an order (RFO) regarding custody, visitation and "for property control."

"[Husband] seeks to move back into the home and to take care of the party's minor son on a full time basis. After a lengthy evidentiary hearing, the Court issued a 2-year DVRO on March 4, 2020. The Court will not require a domestic violence victim to move out so that her abuser can have exclusive possession of the home. [Husband] raises no issues in his RFO that would warrant altering the custody and visitation orders currently in effect. Although [husband] is not inappropriate with the minor, supervised visits are still necessary as the Court finds [husband] to be a flight risk. He has been evasive regarding his whereabouts and the address that can be used for service in this matter. Based on the entire record in this matter including the prior testimony of the parties at the domestic violence trial earlier this year, the Court is concerned that [husband] has 'weaponized' the minor son as part of his ongoing emotional abuse and harassment of [wife] and presents a substantial risk of fleeing with the child. The current custodial arrangement is therefore in the best interests of the minor child. Visits shall remain supervised."

### 9. February 5, 2021 Denial of Request for Order Modification

On February 5, 2021, the trial court convened a hearing to consider husband's request to modify legal and physical custody of the

24

child and the visitation schedule, which had been set by the March 4, 2020 orders.

After considering arguments, the court found husband had seen the child only a few times since August 13, 2020 despite a visitation order that allowed for significantly more visitation. Based on its finding, the court denied the request to modify visits unless and until husband participated in visits on a regular basis. The court also ruled the existing order regarding legal custody would stand based on the section 3044 presumption, and that the previously ordered DVRO, put in place following an extensive hearing, should continue to be followed by the parties.

### c.    *Analysis*

Husband presents an amalgamation of arguments that neither individually nor collectively provide a basis for reversal of any of the challenged orders.

Based upon the order in which the court held the hearings on the parties' various requests for relief, husband avers he did not receive appropriate time or notice to rebut wife's allegation that he made a false claim that she sexually abused the child. We disagree. The record shows the trial court first resolved husband's request for custody based on his claim that wife was sexually abusing the child, and then proceeded to resolve wife's requests for a DVRO and custody of the child. Additionally, the record shows the court's procedure was expressly agreed to by husband's counsel at the November 7, 2019 hearing, with no contention that section 3027.1 did not apply (the basis now asserted on appeal). Nor did husband make any argument to the trial court that section 3027.1 was unconstitutional because it

25

interfered with a parent's duty to protect the child and results "in silencing of concerns due to fear of being stripped of all rights to parenthood." Having failed to make these arguments in the trial court, husband's claims of error are forfeited. (See *Fourth La Costa Condominium Owners Assn. v. Seith* (2008) 159 Cal.App.4th 563, 585 [constitutional issues not raised in the trial court are forfeited on appeal].)

Husband also appears to contend that the November 26, 2019 order awarding sanctions to wife should be set aside because "there was no evidence" and the court never made a specific finding, as required under section 3027.1, that husband or husband's counsel knew the child abuse allegations were false when "made/filed" and husband knew they were false "*at the time of filing*." (Original italics and underlining.) However, husband does not cite to any portion of the record demonstrating that the court was ever asked to make specific findings pursuant to section 3027.1. Instead, after the court ruled that husband could not reasonably believe the video demonstrated abuse of any kind, husband's counsel informed the court that he had no further evidence to offer and did not request that the court make any additional findings. Having failed to request the specific findings he contends he was entitled to under the statute, husband has forfeited his claim of error on appeal. (See *County of San Luis Obispo v. Abalone Alliance* (1986) 178 Cal.App.3d 848, 868 [where trial court considered all criteria imposed by statute before concluding defendants were entitled to relief, plaintiff's failure to request a specific finding on a criterion waived any objection to the lack of a finding].)

Similarly, we see no merit to husband's contention that the trial court misapplied section 3027.5, which prohibits a court from ordering supervised visits, or denying custody to a parent, solely because the parent did any of the following: (1) lawfully reported suspected sexual abuse of the child; (2) otherwise acted lawfully, based on a reasonable belief, to determine if the child was the victim of sexual abuse; or (3) sought treatment for the child from a licensed mental health professional for suspected sexual abuse. Husband's contention fails because it is premised on a false assertion. The trial court did not order supervised visits and deny him custody based *solely* on his allegations of wife's sexual abuse of the child. Indeed, the record shows the court's order was based on other factors including that he had not rebutted the presumption in section 3044 and he was a flight risk. Consequently, husband's claim of error fails.

In challenging the court's factual finding that wife was entitled to a DVRO, husband contends the court "wrongfully characterized" and did not "give proper weight" to his testimony, and wrongfully gave credence to wife's "faulty credibility" and her description of "the watermelon and knife story" that could not have occurred as described based on "the laws of physics and human reflexes." We decline to address these contentions as husband has not tendered the issue, "together with a fair summary of the evidence bearing on the challenged finding, particularly including evidence that arguably *supports* it." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409–410 (*Huong Que*).) "[W]hen an appellant urges the insufficiency of the evidence to support the findings it is his duty to set forth a fair and adequate statement of the evidence which is claimed to be insufficient."

(*Hickson v. Thielman* (1956) 147 Cal.App.2d 11, 14–15.)  As a reviewing court we are not required to "undertake an independent examination of the record when appellant has shirked his responsibility in this respect."  (*Ibid*.)

Likewise, we find unavailing husband's contention that the March 4 DVRO is not supported by *Altafulla v. Ervin*, *supra*, 238 Cal.App.4th 571 (*Altafulla*), which was cited by the trial court.  The Domestic Violence Prevention Act (DVPA; §§6200 et. seq.) defines " '[a]buse' . . . as intentionally or recklessly causing or attempting to cause bodily injury, . . . or engaging in any behavior that has been or could be enjoined pursuant to section 6320.  (§ 6203.)  The behavior outlined in section 6320 includes . . . disturbing the peace of the other party . . . .  (§ 6320.)"  (*Conness v. Satram* (2004) 122 Cal.App.4th 197, 201–202.)  Opinions have held that " 'the plain meaning of the phrase "disturbing the peace" in section 6320' " may be properly understood as conduct that destroys " 'the mental or emotional calm of the other party.' "  (*Altafulla, supra,* at p. 579, quoting *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1495 (*Nadkarni*).)

Hence, as a matter of law, the trial court could find that husband's conduct toward wife constituted abuse under the DVPA as it involved his attempt to cause physical injury.  In addition, his secret video recording later used to make a false claim that wife was sexually abusing the child caused and no doubt was calculated to cause wife grave emotional distress.  (See *Altafulla, supra,* 238 Cal.App.4th at pp. 575–576, 579 [DVRO supported by evidence that the defendant distributed emails to third parties complaining of plaintiff's unfaithfulness and attaching photographs of the plaintiff and a man

28

with whom she was having an affair; such distribution "did cause and no doubt was calculated to cause, [the plaintiff] grave emotional distress"]; *Nadkarni, supra*, 173 Cal.App.4th at p. 1498 ["the plain meaning of the phrase 'disturbing the peace' in section 6320 may include, as abuse within the meaning of the DVPA," reading and publicly disclosing confidential e-mails].)

Husband also makes various assertions in support of his contention that the trial court erred in awarding sole custody of the child to wife based on the rebuttable presumption in section 3044. We decline to address his arguments as he cites no portion of the record in which he presented these arguments in the trial court. Accordingly, we deem this claim to be forfeited. (See *People v. Saunders* (1993) 5 Cal.4th 580, 590 [" ' "[n]o procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in . . . civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it" ' "].)

## IV.  Child Support Arrearages

### a.  *Relevant Facts*

On February 28, 2018, following a hearing, the trial court issued an order that, among other things, directed husband to pay child support in the sum of $1,814 per month commencing February 15, 2018.

On January 17, 2020, wife filed a request for orders for: (1) child support arrearages; (2) a child support security trust account; and (3) bifurcation of the issue concerning the sale of the marital residence. Wife asserted husband owed the total sum of $18,140 in child support,

29

accrued over 10 months. Wife also asserted husband had not paid support in the past, was extremely secretive about his finances, kept documents and cash in a briefcase to which she had no access, and maintained a business in China and had bank accounts in China that she could not access. Wife therefore asked the court to direct the creation of a child support security account and that "$100,000" of husband's net share of the proceeds of the sale of marital residence be placed in trust as security for future child support.

In seeking bifurcation of the issue of the sale of the marital residence, wife asserted the parties' estimated equity was $297,165 based on a valuation of $771,965 and outstanding mortgage of $474,800. Wife further noted that child support arrearages would reduce husband's share of the equity to $120,000; wife sought $100,000 of husband's equity to be held in trust as security for future child support, with the balance to be held in trust pending further requests for attorney fees or other orders. Wife also requested temporary spousal support, which issue had not yet been addressed by the court.

On February 26, 2020, the trial court convened a hearing on wife's request for orders. At that time, the court was aware that husband had filed a bankruptcy petition, which operated to stay the sale of the marital residence. The bankruptcy petition did not impede the court's ability to make orders determining child support arrearages or temporary spousal support. When informed that the bankruptcy stay would be resolved by April 2, the court agreed not to consider wife's request to bifurcate the issue of the sale of the marital residence.

The court issued an order determining (1) husband owed child support of $14,512 (February 28, 2018 to October 25, 2018) plus

30

interest of $2,902.40, and (2) husband owed unpaid child support of $4,682 accruing interest at the rate of $1.26 per day until paid in full for the period November 19, 2019 to February 26, 2020. Commencing February 26, 2020, husband was ordered to pay $1,484 per month for temporary child support and $1,320 for temporary spousal support. The court also directed that the support amounts, including interest, were "subject to retroactive modification." In determining husband's support obligation, the court imputed income of $125,000 per year based on its findings that husband had a Ph.D., was previously paid $150,000 per year, was a highly skilled employee in a lucrative industry, and was likely currently gainfully employed as evidenced by his cash payments for his credit cards.

On August 10, 2020, the trial court convened a hearing on husband's request to set aside the February 26, 2020 order. The court denied husband's motion in a written order filed on August 10, 2020, which stated, in pertinent part, as follows:

> "First, [husband] contends that [wife's] January 17, 2020 RFO [Request for Order] did not seek spousal support. Although the cover sheet to the RFO (FL-300) did not check the box for spousal support, [wife's] 5-page declaration in support devoted two pages to the issue, in a section captioned, in bold, 'Petitioner's Request for Spousal Support.' Consistent with [California Rules of Court, rule 5.92], Petitioner's RFO 'set forth facts sufficient to notify the other party of the moving party's contentions in support of the relief requested.

> "Second, [husband] contends that [wife's] RFO did not seek an income imputation. But [wife's] declaration regarding spousal support discussed at length [husband's] earning capacity and the income that should be attributed to him for purposes of a spousal support order.

31

"Third, [husband] contends that [wife's] RFO did not seek child support and that the prior child support order in this matter (FOAH [Findings and Order After Hearing] filed February 28, 2018) had been terminated when the initial DVRO in this matter was terminated on October 26, 2018. The October 26, 2018 order states: 'Child custody, visitation (parenting time), and child support orders in Restraining Order After Hearing [form DV 130] . . . [a]re also terminated.' But the initial child support order was set forth in a FOAH filed February 28, 2018. The May 29, 2018 DVRO did not order child support. The order terminating that DVRO thus terminated the custody and visitation orders set forth in the DVRO – but there were no child support orders in the DVRO to terminate. Thus, the February 28, 2018 child support order had not been terminated and was in effect at the time of the hearing on February 26, 2020. While [husband] is correct that [wife's] January 17, 2020 RFO did not expressly seek a modification in child support, the Court finds that [husband] suffered no prejudice from the Court's February 26, 2020 order modifying child support. [Wife's] RFO did seek child support arrears, but not for the period after the issuance of the February 28, 2018 child support order during which the parties reconciled and were living together. The child support order in effect at the time of the February 26, 2020 hearing was the February 28, 2018 FOAH, ordering [husband] to pay $1,814 a month in child support. Upon hearing [wife's] RFO for spousal support in February 2020, the Court adopted inputs for a new dissomaster. These inputs resulted in a guideline child support amount of $1,484, which is *less* than the prior operative order of $1,814. Thus, [husband] would have been prejudiced had the Court left the prior child support order in place (notwithstanding the new inputs to the dissomaster). The Court's order setting a new child support amount in the February 26, 2020 FOAH benefited [husband] by decreasing his monthly child support obligations.

"Fourth, [husband's] new counsel has recently [substituted] into this matter and filed a reply brief on August 4, 2020. Although this reply brief is untimely . . ., the Court will consider it to avoid any meritless procedural objections to this ruling. The reply brief raises various factual arguments about payments [husband] has purportedly made and that should be credited

towards any support obligations. At the hearing, counsel for [husband] also noted that [husband] was making mortgage payments. [Husband] was aware in advance of the February 26, 2020 hearing of any payments he supposedly made. These are not new facts and they form no basis for setting aside the February 26, 2020 FOAH.[10]

"Fifth, [husband's] counsel emphasized at the hearing that [husband] was unrepresented at the February 26, 2020 hearing. On the morning of the February 26, 2020 hearing, [husband] requested a continuance. The Court denied the last minute, morning-of request. [Husband] claims he was not aware of the hearing but that is untrue. The Court had advised him personally of the February 26, 2020 hearing on February 10, 2020, when the parties were before the Court on the domestic violence matter. In addition, [wife's] January 17, 2020 RFO [request for order] had been personally served on [husband's] prior attorney (see Proof of Service, filed January 24, 2020), and [husband] admitted that his prior attorney had provided him with all the files before substituting out of the case. [Husband's] prior attorney substituted out of the matter, with [husband's] consent on February 7, 2020. [Husband] had almost three weeks to find substitute counsel before the February 26, 2020 hearing. [Wife] had an immediate need for support and a continuance would have prejudiced her. At the same time, the Court did not find good cause for [husband's] eleventh-hour request for a continuance of a hearing of which he was fully aware. [Husband's] lack of counsel at the February 26, 2020 hearing does not warrant granting the relief requested[.] This is particularly so because the main argument articulated by [husband's new] counsel in favor of setting aside the earlier FOAH is that [husband] had actually made various payments. These factual arguments, as noted above, were arguments that

_____

10    At this point in the order, the trial court further stated: "Counsel for [husband] argued at the hearing that support should not be awarded for any period during which the parties reconciled. This is legally irrelevant as the order for arrears excluded the period during which the parties reconciled."

[husband] was aware of and required no specialized legal training to make."

### b.    *Analysis*

Husband challenges the child support arrearages set forth in the February 26, 2020 and August 10, 2020 orders.  He complains the court: (1) erroneously assumed child support was in effect from November 2019 (when the parties separated for the second time) to February 26, 2020, "but in fact the prior child support order was equitably terminated at the time of reconciliation on 10/25/18;" (2) failed to accept husband's testimony and failed to give him additional time to provide proof of a cashed check of "$3680" made payable to wife as payment of child support; and (3) refused to allow him a continuance at the February 26, 2020 hearing to present proof of a cashed check and ignored the production of the cashed check at the August 10, 2020 hearing.  Husband also avers wife lied regarding whether she received any child support between February 2018 and October 2018.  In sum, according to husband, "[a]ssuming no other errors, the arrearage amount drops from $19,195 to below $10,000.  However, [husband] was paying the mortgage, property tax and home insurance payments, a total of $3,370 per month, when [wife] had the exclusive use of the [marital residence] during the time between, Feb. 2018 and October 25th in 2018, the arrearage was calculated. . . . Such mortgage payments should have been credited towards [husband's] support obligation.  *In re Marriage of Epstein (1979) 24 Cal.3d 76, 85.*" (Original italics).

Again, we decline to address husband's arguments as he has not tendered the issue, "together with a fair summary of the evidence

34

bearing on the challenged finding, particularly including evidence that arguably *supports* it." (*Huong Que, supra,* 150 Cal.App.4th at pp. 409–410.)  In support of his argument, husband cites to few and isolated portions of the record: two pages of the February 26, 2020 hearing and a declaration he filed on August 4, 2020.  While we have a copy of the reporter's transcript of the February 26, 2020 hearing, we do not have either a reporter's transcript or settled statement of the August 10, 2020 hearing.  Moreover, husband's contention that his mortgage payments should have been credited towards his support obligation, pursuant to *In re Marriage of Epstein, supra,* 24 Cal.3d 76 (*Epstein*),[11] is not persuasive.  In *Epstein*, our Supreme Court held that under certain circumstances a spouse's payment of mortgage for the marital residence may constitute a discharge in part of the duty to pay child support.  (*Id*. at p. 85.)  However, husband presents no cogent argument demonstrating the trial court committed prejudicial error by rejecting his contention that his payment of mortgage payments should have been found to be in discharge of his duty to pay child support.

In sum, because husband has not properly briefed the issue, his claims of error regarding the awards of child support arrearages are forfeited.  (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699 [appellate court ignores contention supported only by citations to general law but no argument applying the law to the circumstances of the case].)

## V.    Child Support Security Trust Account

### a.     Relevant Facts

---

[11]     *Epstein* was superseded by statute on other grounds as stated in *In re Marriage of Walrath* (1998) 17 Cal.4th 907 at page 914.

In her January 17, 2020 request for orders, wife sought to invoke the court's authority "to create a trust account for the purpose of securing future child support," pursuant to sections 4012 and 4600 et seq.[12]  She asserted husband was then in arrears in the payment of child support in excess of 60 days, had not made any partial payments, and maintained bank accounts in China outside the reach of any enforcement.  She also asserted husband had "sufficient equity in the [marital] residence" for the requested child support security trust account and those funds could be used for future, unpaid support.  Wife further asserted that "section 4610, subject to sections 4613, 4614, and 4615, grant[ed] the Court the authority to make orders 'requiring [a payor parent] to deposit assets to secure future support payments with the deposit holder designated by the Court.' [¶] The conditions required for the court to order the relief . . . are set forth in section 4613," which allows the court to issue such an order if "*[t]he job history of the obligor-parent shows that an assignment of a portion of salary or wages pursuant to Chapter 8 (commencing with Section 5200), would be difficult to enforce or would not be a practical means for securing the payment of the support obligation, due to circumstances including, but not limited to, multiple concurrent or consecutive employers*" (*id.*, subd. (c))."  (Original italics.)  Wife then asserted husband clearly fell within

---

[12]     Section 4012 states: "Upon a showing of good cause, the court may order a parent required to make a payment of child support to give reasonable security for the payment."  Section 4600 et. seq. provides "an extraordinary remedy for cases of bad faith failure to pay child support obligations," allowing the court to require a parent to "deposit assets to secure future support payments with the deposit holder designated by the court."  (*Id.*, §§ 4600, 4610.)

subdivision (c) of section 4613 "as there are no practical means to enforce a support order in China, where [he] is employed and where [he] maintains a bank account."

Following the February 26, 2020 hearing, the trial court issued an order directing "the creation of a Child Support Security Trust Account as requested by [wife] . . . to be secured by 100% of [husband's] . . . equity in the [marital] residence. . . ." Thereafter, following an April 8, 2021 hearing, the trial court issued an order that: (1) granted wife's request to have the exclusive right to list and sell the marital residence; (2) directed husband to cooperate fully with the sale (including signing all necessary documents); and (3) if husband failed or refused to sign all necessary documents, then the clerk of the court was appointed to act as elisor and sign all documents to complete the sale. The court found wife was entitled to $66,987.35, which sum represented child support and spousal support arrears as of November 9, 2020. The court further directed that any remaining funds from the sale of the marital residence were to be placed in a trust account to be held pending further order of the court.

On April 15 and 19, 2021, husband made three motions including a motion to vacate the February 26, 2020 order directing the creation of the child support security trust account. On May 28, 2021, these motions were considered at a hearing convened by the trial court. The court took the matter under submission and, on June 2, 2021, issued an order denying the motions after "review and consideration of the moving papers and responses," "extensive argument by counsel," and *County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, as requested by husband's counsel.

### b.    *Analysis*

Husband challenges the portion of the February 26, 2020 order directing the creation of a child support security trust account to be funded by 100 per cent of his equity in the proceeds of the sale of the marital residence.  In support of his argument, he contends the order (1) improperly issued after the court was informed that husband had filed a bankruptcy petition that stayed any actions to obtain the debtor's property or enforce a lien against the debtor's property, and (2) failed to comply with certain threshold findings and procedural requirements enumerated in sections 4560, 4561, 4565, and 4613.

We decline to address husband's contentions regarding the creation of the child support security trust account as he has failed to tender the issue, "together with a fair summary of the evidence bearing on the challenged finding, particularly including evidence that arguably *supports* it."  (*Huong Que, supra,* 150 Cal.App.4th at pp. 409–410.)  In support of his contentions, husband asks us to consider three pages in the appendixes he filed in case No. A163530, as well as his "Nov. 2, 2020, Request for Order" (no record citation), and his "Income and Expense Statement of April 2018" (no record citation).  He also refers us to the hearing held on February 26, 2020, the court's February 26, 2020 order, and the June 2, 2021 order following the May 28, 2021 hearing.  However, he cites to no portions of the reporter's transcripts of the February 26, 2020 hearing or the May 28, 2021 hearing.  Because, as an appellate court, we are not "required to search the record on [our] own seeking error" (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768, we find husband has forfeited his challenge to the court's order directing the creation of a child support

38

security trust account. (*Nwosu v. Uba, supra*, 122 Cal.App.4th at p. 1246 [appellant court will deem forfeited an argument that is not supported with "necessary citations to the record"].)

## VI. August 10, 2020 Order Awarding Sanctions Under Family Code Section 271

### a. *Relevant Facts*

On May 20, 2020, wife filed a motion seeking sanctions based, in pertinent part, on husband's filing of a request to set aside the February 26, 2020 order without a legal or factual basis, and solely to harass her. Sanctions were sought under both Code of Civil Procedure section 128.7 and Family Code section 271.[13]

---

[13] Section 271 provides:

"(a) Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement or litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award.

"(b) An award of attorney's fees and costs as a sanction pursuant to this section shall be imposed only after notice to the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard.

"(c) An award of attorney's fees and costs as a sanction pursuant to this section is payable only from the property or income of the party against whom the sanction is imposed, except that the award may be against the sanctioned party's share of the community property."

The court granted wife's request for sanctions "pursuant to Family Code 271" in its August 10, 2020 order: "The Court agrees that [husband's] conduct throughout this litigation has been sanctionable, including the meritless motion to set aside the February 26, 2020 FOAH [Findings and Order After Hearing]. [Husband's] RFO [Request for Order] seeks to relitigate issues after a contested a[nd] lengthy hearing that he ultimately chose to walk out of. The Court agrees that [husband's] conduct has unnecessarily increased the cost of litigation in this matter and wasted judicial resources. [Wife] currently has $21,500 in unpaid attorney's fees. The Court is concerned . . ., however, that [husband] does not have the present ability to pay in light of, among other things, his pending bankruptcy action. The Court therefore awards sanctions in the amount of $20,000 but stays the requirement to pay this amount pending further information from the bankruptcy case."

In a footnote, the court referenced its authority to rule on the request for sanctions "as it was made in connection with proceedings related to 'the establishment or modification of an order for domestic support obligations' and thus appears to fall under an express statutory exemption from the automatic stay provisions of federal bankruptcy law. (11 U.S.C. § 362(b).) Although the Court hereby grants the sanctions request, it nevertheless will stay the requirement to pay sanctions, pending resolution of the bankruptcy matter."[14]

---

[14] After the issuance of the August 10, 2020 order, the Bankruptcy Court entered an order on January 11, 2021 granting wife's motion to dismiss husband's then pending Chapter 7 bankruptcy petition under 11 U.S.C. § 707(b)(3) as a bad faith filing.

### b. Analysis

Husband contends the $20,000 sanctions award was made in violation of the procedural requirements for an award of sanctions under Code of Civil Procedure section 128.7.

Concededly, wife requested sanctions under *both* Code of Civil Procedure section 128.7 and Family Code section 271. However, the trial court explicitly chose to award sanctions pursuant to Family Code section 271, which request is not governed by the procedural requirements for sanctions under Code of Civil Procedure section 128.7. Because husband has made no argument that the trial court committed reversible error or abused its discretion in awarding sanctions under Family Code section 271, we do not further address his claim of error.

## VII. Husband's Contentions Regarding His Request for *Epstein* Credits and *Watts* Reimbursement

Husband requests a remand for further proceedings based on his contention that the trial court failed to consider his request for *Epstein* credits and *Watts* reimbursement (hereafter *Epstein/Watts* request). (See, *Epstein*, *supra*, 24 Cal.3d 76; *In re Marriage of Watts* (1985) 171 Cal.App.3d 366 (*Watts*).)[15] We decline to review husband's contention

---

[15]   *Epstein*, *supra*, 24 Cal.3d 76, held " 'that, as a general rule, a spouse, who, after separation of the parties, uses earnings or other separate funds to pay preexisting community obligations should be reimbursed therefor out of the community property upon dissolution.' " (*Id*. at p. 84.) *Watts*, *supra* 171 Cal.App.3d 366, held that " 'the trial court erred in concluding that it had no authority to reimburse the community for the value of [a party's] exclusive use of the [marital] residence . . . between the date of separation and the date [on which the community itself no longer held an interest in the residence, which, was the date on which the marital residence was sold]." (*Id*. at p. 374.) Determinations of whether a spouse is entitled to *Epstein* credits and

41

as he has failed to provide us with an adequate record to consider the issue.

Husband refers us to the portion of the record showing that on two occasions the trial court deferred consideration of his *Epstein/Watts* request. On November 9, 2020, the court deferred consideration of the request to the trial on the disposition of the marital residence. On April 8, 2021, the court deferred consideration of the request to the trial on the distribution of the sale proceeds of the marital residence. While husband asserts he raised the *Epstein/Watts* request in his trial brief filed for the September 29, 2021 trial when the court distributed the sale proceeds of the marital residence, he has not submitted a reporter's transcript or a settled statement of that proceeding.[16]

In the absence of a record as to what occurred at the September 29, 2021 trial proceeding, we are in no position to evaluate any ruling made by the trial court regarding husband's *Epstein/Watts* request.

---

*Watts* reimbursement necessarily require the resolution of factual issues entrusted to the trial court's discretionary authority. (*In re Marriage of Hebbring* (1989) 207 Cal.App.3d 1260, 1272 ["*Epstein* does not mandate full reimbursement in all cases, but allows the trial court discretion to order reimbursement in an amount that is equitable"]; *Watts, supra*, at p. 374 [trial court's award of *Watts* reimbursement should be made "after taking into account all the circumstances under which exclusive possession was ordered"].)

[16] In this court, husband filed two notices designating the record on appeal from the September 29, 2021 judgment. In both notices, he marked boxes indicating he was choosing to proceed with a record of the oral proceedings in the superior court by "attach[ing] a certified transcript under [California Rules of Court] rule 8.130(b)(3)(C)." However, the notices do not have attached a certified transcript of the trial held on September 29, 2021.

Accordingly, his claim – that the trial court committed prejudicial error by failing to consider his *Epstein/Watts* request – necessarily fails. (See *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1295 [appellants' failure to furnish an adequate record of proceedings requires that their claims be resolved against them]; *Elena S. v. Kroutik, supra,* 247 Cal.App.4th at p. 576 ["[i]n the absence of a proper record, which would include either a reporter's transcript or a settled statement (neither of which we have in this case), we must presume the trial court acted properly;" "[t]herefore, the judgment is correct and must be affirmed"].)

## VIII. Husband's Constitutional Arguments

Husband presents conclusory arguments contending the child custody and support orders, along with the November 7, 2019 Elisor Order, should be vacated "due to constitutional" violations of his rights to equal protection and procedural due process under the Fifth and Fourteenth Amendments of the United States Constitution. He does not cite to any portion of the record showing that he challenged any of the described orders on the constitutional grounds he now asserts on appeal. Accordingly, we deem his constitutional arguments forfeited. (See *Jackpot Harvesting Co., Inc. v. Superior Court* (2018) 26 Cal.App.5th 125, 154 ["[a]s a general rule, 'constitutional issues not raised in earlier civil proceedings are waived on appeal' "]; *In re M.H.* (2016) 1 Cal.App.5th 699, 713 [by failing to raise the constitutional challenge in the trial court, appellant forfeited the argument that a statute violated the First Amendment]; *Fourth La Costa Condominium Owners Assn. v. Seith, supra,* 159 Cal.App.4th at p. 585 [constitutional issues not raised in the trial court are forfeited on appeal].)

43

## IX. Conclusion

We have made a concerted effort to address husband's arguments. Any issue not specifically mentioned is omitted due to his failure to either present us with a proper record and/or make cogent arguments supported by record citations and relevant legal authority.

### DISPOSITION

The orders and judgment are affirmed. As no respondent's briefs were filed, no costs are awarded to either party. (Cal. Rules of Court, rule 8.278(a)(5).)

_____

Petrou, J.


WE CONCUR:


_____

Tucher, P.J.


_____

Fujisaki, J.


A160335/A160735/A163530

45